Fahl, Appellee, *v.* Board of Review, Bureau of Unemployment Compensation, et al., Appellants.
Stonehill, Appellee, *v.* Board of Review, Bureau of Unemployment Compensation, et al., Appellants.
Patton, Appellee, *v.* Board of Review, Bureau of Unemployment Compensation, et al., Appellants.

(Nos. 1277, 1278 and 1279—Decided June 2, 1965.)

*Messrs. Emans, Bowers, White & DeMeo,* for appellees Amanda M. Fahl and Robert M. Stonehill.

*Messrs. Waltz & Waltz,* for appellee Harry L. Patton.

*Mr. William B. Saxbe,* attorney general, and *Mr. H. C. Dutro, Jr.,* for appellants.

*Per Curiam.* These three cases are on appeal on questions of law by the Administrator of the Bureau of Unemployment Compensation from judgments of the Common Pleas Court of Allen County entered on appeals in that court of the respective claimants from decisions of the Board of Review, Bureau of Unemployment Compensation, disallowing application to institute further appeal from the decision of the referee in each case. The appeals were heard together in this court and in the Common Pleas Court, as the controlling issues in all three cases are, in all essentials, identical.

When the right to prosecute an appeal from such disallowance under the provisions of Section 4141.28, Revised Code, in its existing form, was questioned by this court in the case of *Smith* v. *Ohio Steel Foundry,* the Supreme Court established by its decision that such right exists (177 Ohio St. 47). Though it might be fairly argued that the scope of the determination on such appeal should be confined solely to the issue of whether the Board of Review abused its discretion in disallowing the ap-

plication to institute further appeal, we presume, although it has not said so, that when the Supreme Court determined that an appeal exists from an order of disallowance it contemplated that a Common Pleas Court would, as it did here, review the decision of the referee and the record upon which such decision came about.

In the *Patton* and *Stonehill cases,* now before us, the referee affirmed respective decisions of the administrator on reconsideration that the ''claimant quit work with Baldwin-Lima-Hamilton Corporation without just cause; suspended benefit rights for the duration of unemployment caused by said separation and disallowed claim for the week ending * * *.'' In the *Fahl case* the referee affirmed a similar decision of the administrator on reconsideration ''that claimant was voluntarily unemployed due to retirement.'' The stated basis of the administrator's decision and the referee's decision in all three of the cases was that the respective claimants were members of the United Auto Workers Union which had negotiated a collective bargaining agreement with Baldwin-Lima-Hamilton Corporation providing for the compulsory retirement of employees at the end of the month in which they become 65 years of age, and that the employment of each of the claimants was terminated pursuant to such agreement.

The Common Pleas Court found in each case that the claimant ''was involuntarily unemployed and that the termination of such employment was not a quit without just cause,'' ''that the decision of the administrator and the referee is unlawful, unreasonable and against the manifest weight of the evidence,'' and entered judgment reversing the decision of the Board of Review and remanding same ''to the Bureau of Unemployment Compensation to effect the allowance of benefits for appellant claimant.''

The administrator now claims error of the Common Pleas Court (1) in holding that the decision of the referee was unlawful, unreasonable, and against the manifest weight of the evidence, and (2) in substituting its judgment for that of the Bureau of Unemployment Compensation and thereby usurping its authority.

The effect of the judgment of the Common Pleas Court in each case was to reverse the decision of the referee, to enter

final judgment in favor of the claimant, and to order the payment of unemployment benefits. The jurisdiction of the Common Pleas Court to enter judgment on appeal in these cases is limited and defined by Section 4141.28, Revised Code, providing among other things:

"(O) * * * If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. * * *"

A Common Pleas Court may not substitute its judgment for that of the Board of Review (or referee), Bureau of Unemployment Compensation, on factual issues and may modify the board's decision and enter final judgment only where the facts are not in dispute and such undisputed facts are determinative of the issues. *Brown-Brockmeyer* v. *Roach,* 148 Ohio St. 511; *Craig* v. *Bureau of Unemployment Compensation,* 51 Ohio Law Abs. 449; *Briggs* v. *Board of Review, Bureau of Unemployment Compensation,* Case No. 887, Court of Appeals for Tuscarawas County (unreported); and *Kilgore* v. *Board of Review,* 2 Ohio App. 2d 69. Compare, also, decisions under a similar tax appeal statute, *Carney, Aud.,* v. *City of Cleveland,* 167 Ohio St. 22; and *In the Matter of the Application for Exemption of Real Property from Taxation and Remission of Taxes and Penalties Filed by Bethel Church,* Case No. 5890, Court of Appeals for Lucas County (unreported); and decisions cited under Section 2505.37, Revised Code, a part of the Appellate Procedure Act.

The evidentiary records adduced before the referee were in each case woefully inadequate. Although it appears conceded that each of these claimants was subject to the same collective bargaining agreements respecting his employment and his pension, the only evidence pertaining specifically to the retirement provisions thereof appears solely in the record of the *Amanda Fahl case,* allegedly quoted from a "pension agreement," and reads as follows:

"An employee at age 65 or older on October 1, 1960, shall be automatically retired on that date. And thereafter *an employee will be automatically retired on the 1st day of the month, following his 65th birthday."* (Emphasis added.)

The balance of the *pension* agreement and the collective

bargaining *employment* agreement are not in any of the three records. Some mention is made in the Amanda Fahl record that she receives $31.88 per month, but the exact nature of the payment is indefinite, and no mention of pension payments appears in the other two records.

Though the claimants assert their desire to continue working, each record is silent as to the fulfillment by the claimant of one or more of the five items set forth in division (A) of Section 4141.29, Revised Code, as prerequisites to a claimant being entitled to receive unemployment benefit payments. In each case the referee found only that at the time of his retirement the claimant was physically able to continue to perform the type of work that he had been doing and would have preferred to continue working. It will be noted that the referee made no finding as to whether the claimants were actively seeking suitable work and were unable to obtain suitable work. The records affirmatively show that the administrator made no findings whatsoever except that each claimant quit his work without just cause.

We must conclude, therefore, at the outset, that the Common Pleas Court exceeded its jurisdiction and committed error prejudicial to the appellant administrator when it ordered the bureau "to effect the allowance of benefits for appellant claimant," for there had been no determination by the administrator, referee, or Board of Review that the five items set forth in division (A) of Section 4141.29, Revised Code, as prerequisites to the payment of benefits, had been fulfilled by the respective claimants, and there were not sufficient undisputed facts of probative value in the record upon which it could be determined by the Common Pleas Court that each claimant had fulfilled all five of such prerequisites.

It appears then that the sole *issue* determined by the administrator and the referee, and the only issue properly before the Common Pleas Court on appeal, was whether these claimants had quit their work without just cause. In this connection it is provided in division (D) of Section 4141.29, Revised Code, that:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"\* \* \*.

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause \* \* \*."

That provision constitutes a condition subsequent to the qualification for benefits under division (A) of Section 4141.29, Revised Code, and, notwithstanding that a claimant may fulfill the five prerequisites to the payment of unemployment benefits prescribed by division (A), he shall be disqualified to receive benefits if "he quit his work without just cause."

More precisely stated, the issue is whether solely on the undisputed evidence of a retirement pursuant to and by reason of a retirement clause extracted from a collective bargaining pension agreement providing that an employee shall be automatically retired on the first day of the month following his 65th birthday, a court may determine, as a matter of law, that by virtue of such retirement an employee *did not* quit his work without just cause. Subordinate to this issue is, of course, the obverse of same as to whether solely on such undisputed evidence the administrator, referee, or Board of Review, Bureau of Unemployment Compensation, might determine, either by weighing such evidence or as a matter of law, that by virtue of such retirement the employee *did* quit his work without just cause.

In determining the answer to these questions we are first aware that there are a number of decisions from other jurisdictions pertaining to the various views existing as to the effect of retirement agreements on the right of a claimant to unemployment benefits. The principal cases have been ably analyzed and distinguished by Judge Leach of the Franklin County Common Pleas Court in the case of *Ferrelli* v. *Leach, Admr.*, 89 Ohio Law Abs. 545, which, with the case of *Miller* v. *Bureau of Unemployment Compensation*, Case No. 485, Court of Appeals for Ashland County, decided May, 1964, and unreported, constitute two of the very few Ohio decisions on the subject. However, none of those decisions shows that the court had available to it only evidence of a mere retirement clause; or the decisions depend on different factual situations than here, or upon the interpretation of statutes differing in some degree from the applicable Ohio statutes.

It has been said that the general purpose of the Ohio Un-

employment Compensation Act is "to enable unfortunate employees, who *become and remain involuntarily unemployed* by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis added in part.) *Leach, Admr.,* v. *Republic Steel Corp.,* 176 Ohio St. 221, 223. See, also, *Nunamaker* v. *United States Steel Corp.,* 2 Ohio St. 2d 55, 57. This general purpose is further evidenced by the provision of the first paragraph of Section 4141.29, Revised Code, that "each eligible individual shall receive benefits as compensation for loss of remuneration due to *involuntary total or partial unemployment.*" (Emphasis added.) In the light of this general purpose and this statutory provision, it is reasonable to conclude, as did Judge Leach in the *Ferrelli case, supra,* page 559, that "the word 'quit' * * * connotes a voluntary act not controlled by the *employer.*"

When we refer to Section 4141.31, Revised Code, we also find that the Legislature provided, effective October 20, 1963, that unemployment benefits otherwise payable should be reduced by the total amount of retirement or pension allowances received by an employee under a plan wholly financed by an employer, and by one half of such benefits under a plan jointly financed. A similar provision was in the same statute prior to its amendment effective October 16, 1959, and the statute in its present form has been made specifically applicable, by Section 3 of the enacting bill, to "all claims for weeks of unemployment beginning on and after" October 20, 1963 (Amended Substitute House Bill No. 222, 130 Ohio Laws 1660). It will be observed that Section 4141.31 also provides for the reduction of benefits by one half of old age benefits payable under Title II of the "Social Security Act." It is apparent, therefore, that the Ohio Legislature has intended that *retirement* due to age shall not disqualify any person from receiving unemployment benefits to which they would otherwise be entitled, unless such retirement is under circumstances constituting same a "quit" of work without just cause.

However, it is basic to the law of contracts that a contractual provision shall be construed in the light of the entire contract. *Legler, Admr.,* v. *United States Fidelity & Guaranty Co.,* 88 Ohio St. 336; and 17A Corpus Juris Secundum 107, Contracts, Section 297. Here we do not have the entire collective

bargaining pension agreement and cannot tell, therefore, whether the quoted clause is subject to any qualification in its operation which might bear on the question of whether an employee retiring pursuant thereto "quit his work without just cause." Nor do we have the collective bargaining employment agreement. We cannot tell whether the clause in evidence is in any manner qualified, or is meant to be of benefit to the employee, to the employer, or to be of mutual benefit.

Standing by itself the retirement clause herein has no probative value as to whether the retirement was a "voluntary act not controlled by the employer." The mere fact that the clause was arrived at by the collective bargaining process wherein the union acted as agent for the claimant-employee demonstrates only the voluntariness of the agreement, that is, that the agreement was not coerced and that the employee was a party to it. It does not necessarily follow that the act of retirement produced by the operation of such clause is, or is not, a "voluntary act *not controlled by the employer.*" On the one hand, the retirement provision, if coupled with a pension, may be a fringe benefit demanded by the employee as part of the consideration for his agreement to work. On the other hand, the retirement provision might have been imposed by the employer as a condition of the employment to maintain for the employer a younger, healthier and more adaptable working force. The determination of these matters requires more evidence than a mere retirement clause in the form and manner in which it here appears.

Moreover, again dependent upon the terms and conditions of the entire collective bargaining employment and pension agreements, employment thereunder with compulsory retirement might be equivalent to employment for a fixed term, so that it comes to an end *not by a quit* and *not by a discharge* but by mere expiration of the term of employment by virtue of freely negotiated contractual provisions. In other words, the employee does not bargain to quit at the age of 65, but the only employment offered to him, and which he agrees to accept, extends only to the age of 65. Compare *United States Coal Co.* v. *Board of Review* (Common Pleas), 30 Ohio Law Abs. 509, affirmed 66 Ohio App. 329, motion to certify the record overruled, February 19, 1941, where employees who left work upon the termination of their collective bargaining employment agreement where held

not to be on strike for, in legal effect, the employer-employee relationship no longer existed. Viewed in such light, the condition subsequent of Section 4141.29 (D) (2) (a) might not become operative to disqualify a claimant from obtaining unemployment benefits *if* he is otherwise eligible for and has qualified for same under division (A) of Section 4141.29.

We conclude, therefore, that the bare and undisputed evidence of a clause in a collective bargaining pension agreement providing for automatic retirement of an employee on the first day of the month following his 65th birthday, and retirement pursuant thereto, is not conclusive of the issue of whether such retirement constituted a "quit" of work without just cause, and that such evidence, in and of itself, does not constitute substantial, credible evidence of probative value on which such issue may be determined. Although Section 4141.28 (J), Revised Code, provides that the "board and the referees shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure," they are also required to "take any steps in such hearings, consistent with the impartial discharge of their duties, which appear reasonable and necessary to *ascertain the facts and determine whether the claimant is entitled to benefits under the law.*" (Emphasis added.) The determination of whether a claimant is entitled under the law to benefits may be made only upon substantial, credible evidence of probative value.

There being no substantial, credible evidence of probative value to support the determinations of either the administrator or the referee or the Court of Common Pleas, the decisions of the former and the findings of the latter on the issue of quitting work without just cause are contrary to law. Nevertheless, although for the wrong reasons, the Common Pleas Court acted properly to the extent that it found the decisions appealed from unlawful and adjudged that the same be reversed.

It is, therefore, the order and judgment of this court that to the extent that the judgments of the Common Pleas Court find that the claimant was involuntarily unemployed and that the termination of his, or her, employment was not a "quit" of work without just cause, to the extent that such judgments find the decisions of the administrator and the referee unreasonable and against the manifest weight of the evidence, and to the ex-

tent that such judgments remand the claim to the Bureau of Unemployment Compensation to effect the allowance of benefits for the claimant, such judgments are reversed and vacated. To the extent that such judgments find the decisions of the administrator and the referee unlawful, such judgments are affirmed. This court, coming now to further render the judgment the Common Pleas Court should have rendered, in each case, reverses and vacates the decision of the Board of Review, Bureau of Unemployment Compensation, as represented by the decision of the referee affirming the decision of the administrator on reconsideration, and remands each of the claims to such board and bureau for further proceedings as provided by law.

*Judgments accordingly.*

YOUNGER, P. J., GUERNSEY and MIDDLETON, JJ., concur.