RIVERDALE LOCAL BOARD OF EDUCATION, APPELLEE, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLEE; GRIMM, APPELLANT. ▮

[Cite as Riverdale Bd. of Education v. Grimm (1977), 55 Ohio App. 2d 5.]

(No. 6-77-3—Decided September 27, 1977.)

*Mr. Michael E. Bernard,* prosecuting attorney, for appellee Riverdale Local Board of Education.

*Mr. William J. Brown,* attorney general, and *Mr. Raymond A. Stegmeier,* for appellee Ohio Bureau of Employment Services.

*Mr. James L. Kimbler,* for appellant.

GUERNSEY, J. Appellant, David S. Grimm, a school teacher, made application to the Ohio Bureau of Employment Services for unemployment compensation asserting that he was separated from his employment by the Riverdale Local Board of Education for just cause. His claim was allowed by the administrator for the benefit year starting with January 25, 1976, but disallowed for the week ending January 31, 1976, as he was not able to work during that week. On request to the administrator for reconsideration the administrator determined by decision mailed May 26, 1976, that medical evidence established that claimant was advised to quit on January 20, 1976; that, accordingly

"claimant quit this employment with just cause since continuing in this employment would have been detrimental to his health."

At the bottom of the form containing the administrator's reconsideration decision appears, among other things, the following:

"* * * To be considered timely, your appeal must be filed in person or postmarked no later than fourteen calendar days after the date entered in Item 5, on this form. * * *"

On June 9, 1976, the fourteenth day after the administrator's reconsideration decision was mailed, the clerk of the board of education mailed to the board of review a letter expressing the desire to appeal. This letter was postmarked June 9, 1976, and was received by the board on June 10, 1976, the fifteenth day after the mailing of the administrator's reconsideration decision. No objection was made by the appellant herein as to the timeliness of the appeal and it proceeded to hearing before a referee, who affirmed the decision of the administrator on reconsideration. The board of education then filed its application to institute further appeal which the board of review disallowed.

The board of education filed its notice of appeal in the Court of Common Pleas of Hardin County at which time Grimm moved that the appeal be dismissed because the appeal by the board of education to the board of review from the decision of the administrator on reconsideration had not been timely filed and that decision had become final. This motion was overruled from the bench, the cause was heard on its merits on the bureau's record, the court found the decision appealed from "unlawful, unreasonable and against the manifest weight of the evidence" and reversed same. It is from this judgment of the Court of Common Pleas that appeal has been taken to this Court, the appellant Grimm assigning error of the Common Pleas Court (1) "in reversing the decision of the board of review since it was without jurisdiction to hear the appeal of the board of education," and (2) "in reversing the decision of the board of review."

The issue raised by the first assignment of error relates to the timeliness of the appeal from the decision of the administrator on reconsideration. The governing statute is R. C. 4141.28(H) reading as follows:

"Any interested party may appeal the administrator's decision on reconsideration to the board and unless an appeal is filed from such decision on reconsideration with the board within fourteen calendar days after such decision was mailed to the last known post office address of the appellant such decision on reconsideration is final and benefits shall be paid or denied in accordance therewith."

Interestingly enough it will be observed that this statute does not literally set forth the time within which a party may appeal as does R. C. 4141.28(O) ("Any interested party may, within thirty days after notice of the decision of the board was mailed * * * appeal from the decision of the board to the court of common pleas * * *"), but, instead, sets forth the consequences if an appeal is not filed within fourteenth calendar days. The statute must, however, be construed in a practical manner indicated by these consequences. In other words, if an appeal is filed within the time stated the decision of the administrator on reconsideration becomes final and any action by the board of review subsequently taken to review such decision is wholly ineffective.

Although it is often said that remedial statutes should be liberally construed statutes and rules dealing with the time in which an appeal may be filed are usually considered jurisdictional requiring strict compliance. See, for instance, R. C. 2505.07, and decisions thereunder. Compare *Gregory* v. *Sterling Castings* (1976), 50 Ohio App. 2d 208.

The crucial question then becomes, what is the meaning of the word "filed" as used in R. C. 4141.28(H). The board of education claims that this is determined by Rule UCr-13-01 adopted by the board of review prescribing among other things:

"* * * Notice of appeal may be either mailed or delivered. If notice of appeal is mailed, it must be postmarked before midnight of the last day of the appeal period, if delivered, it must be received at one of the

offices named in UCr-5-01 before the closing time of the office on the last day of the appeal period. * * *"

The board of review has full authority to adopt rules of procedure required for the hearing and disposition of appeals "as it deems necessary and consistent with sections 4141.01 to 4141.46 of the Revised Code." R. C. 4141.-06.

R. C. 4141.28(I) prescribes:

"(I) * * * appeals may be filed with the board, with the administrator or one of his deputies, with an employee of another state or federal agency, or with an employee of the unemployment insurance commission of Canada charged with accepting claims. * * *"

Obviously, this statute is in *pari materia* with R. C. 4141.28(H) and contemplates that an appeal "filed * * * with the board" under R. C. 4141.28(H) is done so when filed with any of those persons, officers or agencies set forth in R. C. 4141.28(I), including "with an employee of another state or federal agency." Reasonably, depositing a letter for postmark by an employee of the United States Postal Service is equivalent to filing same with an employee of a federal agency as of the time that the postmark is affixed and that part of Rule UCr-13-01 equating postmarking with filing is consistent with the governing statutes.

We conclude that the Court of Common Pleas did not commit error in determining that the board of review had jurisdiction to hear the appeal from the administrator's decision on reconsideration.

In reversing the decision appealed from the Common Pleas Court concluded that there was no evidence to support the referee's finding that "[i]t was determined by claimants' [sic] doctor, that claimant should not return to work at Riverdale School systems;" no evidence to support the referee's finding that "[t]he Doctor felt that claimant's return to work at Riverdale School would be injurious to claimant's health"; and that there was no evidence in the record with relation to the referee's finding that "claimant attempted suicide because of personal problems and problems he was having with his work," to show whether the suicide

incident "was prompted by problems claimant was having with his work; or if the incident was prompted by his personal problems." The trial court cites these findings of the referee as being relied upon to support the referee's decision.

The duty of the Common Pleas Court in reviewing the decision appealed is set forth in *Fahl* v. *Board of Review* (1965), 2 Ohio App. 2d 286 (syllabus):

"1. A Common Pleas Court may not substitute its judgment for that of the Board of Review (or referee), Bureau of Unemployment Compensation, on factual issues and may modify the board's decision and enter final judgment only where the facts are not in dispute and such undisputed facts constitute substantial, credible evidence of probative value of the issues to be determined."

See, also, *Kilgore* v. *Board of Review* (1965), 2 Ohio App. 2d 69.

The basic issue before the board (referee) was whether the appellant Grimm was entitled to unemployment benefits and had not quit his work without just cause. R. C. 4141.29. Medical testimony is not necessarily conclusive on the issue of just cause. In this case there was no medical testimony as such, except by way of hearsay. However, in connection with Grimm's original application for benefits and in response to the administrator's request for medical information a physician psychiatrist stated under date of February 25, 1976, that Grimm was under his care from December 1975, to present; that the nature of his ailment was "depressive reaction"; that while under his care Grimm was not able to work from 12/27/75 to 1/27/76; that Grimm can now work full time; that he has not restricted Grimm as to the type of work; and that he advised Grimm to quit his employment on January 20, 1976.

Although there was testimony of the school superintendent that Grimm's teaching was satisfactory, that he was expected to return to work the second semester of the year, that the superintendent had talked to Grimm's doctor who said he would be able to return on January 23, 1976, and that he voluntarily quit because of an emotional involvement with one of his female students, the superinten-

dent also testified that neither Grimm nor his doctor had ever suggested that his quitting was for medical reasons, and that under date of January 16, 1976, Grimm submitted a letter stating, "Due to personal reason, I would like to resign from my science teaching position at the Riverdale High School * * * to be effective January 26, 1976."

Grimm's wife testified that Grimm, after an attempt to commit suicide, was hospitalized for approximately ten days in December 1975, and again for approximately three weeks in January 1976, and that on August 20, 1976, the day of the hearing, Grimm, although employed, was still counseling with his psychiatrist.

The theory of appellant Grimm's case is that the teaching position with appellee board of education, where the girl with whom he was emotionally involved was required by her course of studies to be in a class which he taught, caused him such mental stress as to endanger his health and mental well being which compelled him to resign to seek employment elsewhere. On the other hand the theory of the board of education's case was that he submitted his resignation for personal reasons four days before his psychiatrist advised him to resign for medical reasons, that the psychiatrist did not place any limitation to his returning to work full time, even with appellee board of education after January 27, 1976, that (as also testified to by the superintendent) the girl's parents were willing to make other arrangements for her to fulfill her course requirements without being in Grimm's classroom and Grimm continued to see her in any event, and, for such reasons, his resignation was without just cause.

On this record we have to agree with the trial court's conclusions as to the referee's findings. There being no other evidence of probative value that Grimm quit because it would be injurious to his health for him to return to work with appellee board of education, we conclude that the trial court's ultimate finding and judgment were correct and that same must be affirmed.

*Judgment affirmed.*

MILLER, P. J., and COLE, J., concur.