FRATO, Appellee,

v.

OHIO BUREAU of EMPLOYMENT SERVICES et al., Appellants.

[Cite as *Frato v. Ohio Bur. of Emp. Serv.* (1991), 77 Ohio App.3d 193.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–100.

Decided Sept. 16, 1991.

*Marley Ford Eiger,* for appellee.

*Lee I. Fisher,* Attorney General, and *Merrill H. Henkin,* Assistant Attorney General, for appellant.

---

JOSEPH E. MAHONEY, Judge.

On July 15, 1987, plaintiff-appellee, Amy C. Frato, was hired as a district secretary by Tandy Corporation/Radio Shack ("Radio Shack") at the employer's district office in Willoughby, Ohio. Appellee worked thirty hours per week at a wage of $5 per hour. Her job with Radio Shack was considered a full-time position.

While employed at Radio Shack, appellee began working a second job as a salesperson at Berg's Baby Furniture ("Berg's"). She worked evenings and weekends at Berg's and generally only fourteen to sixteen hours per week.

Radio Shack had a maternity leave policy that covered appellee. It provided for unpaid leave that began and ended on the dates certified by the employee's physician. The policy guaranteed that female employees could return to their former position, or a comparable one, at their prior rate of pay after returning from maternity leave.

Appellee requested and was granted maternity leave as of May 21, 1988, the day she went into labor. Appellee gave birth the following day, May 22, 1988. During her maternity leave, appellee kept in contact with her supervisor, Spin Zucker, and informed him that she wanted to return to work as soon as possible. She even offered to come in to work to help train the temporary replacement who was filling in for her.

By the end of June 1988, appellee met with Zucker and informed him that she was ready, willing and able to return to work and that she had been cleared by her doctor to do so on June 20, 1988. She told Zucker that she had received a release, but he did not ask to see it. Zucker was unable to give appellee a definite date when she could return because of the replacement who had been hired and the lack of work. Appellee telephoned the office frequently, but Zucker began not returning her calls.

This situation continued for approximately one month. Discouraged and in need of a steady income to support herself and her child, appellee made a hasty decision to join a friend who had moved to Florida. She called Zucker on the day she left for Florida in a last minute attempt to secure her former position, but she was told that Zucker was on vacation. Appellee left for Florida after receiving no satisfaction.

By letter dated July 20, 1988, appellee wrote to Zucker resigning her position. The letter stated:

"Dear Spin,

"I'm sorry to have to do this, but I won't be coming back. I had to do what I thought would be best for the baby and I, so I moved on Monday. I called the office, but you were on vacation. I hope that this won't leave you in a bad position. Please try to understand; I did what I had to do. I only had two hours to pack what I could and go. I really enjoyed working with you, I was looking forward to coming back.

"P.S. Can I still use you as a reference?"

Radio Shack received appellee's letter on July 23, 1988 and considered it a voluntary termination as of that date. Appellee returned to Ohio six weeks later and attempted to return to work at Radio Shack. She was turned down for employment because a new employee had been hired to fill her position.

Appellee filed a claim for benefits, but her application was denied at every level of the administrative process. The Board of Review of the Ohio Bureau of Employment Services ("board of review") ruled that appellee voluntarily quit her job at Radio Shack without just cause because she failed to deliver to her employer a medical release to permit her to return to unrestricted work duties following maternity leave as required by the company handbook.

Appellee appealed the decision which denied her unemployment benefits to the Lake County Common Pleas Court. On June 28, 1990, the trial court reversed and vacated the decision of the board, finding that it was unlawful, unreasonable and against the manifest weight of the evidence. The trial court decided that appellee was constructively laid off by her superior and forced to relocate through no action or fault on her part. The court stated that appellee's situation fell squarely within the underlying purpose of unemployment compensation.

Appellant timely filed a notice of appeal with the following assignments of error:

"1. The court of common pleas erred by failing to adhere to the standard of review in Ohio Revised Code 4141.28. The lower court substituted its judgment in place of the Board of Review's judgment and rendered a decision which was contrary to law.

"2. The lower court's decision which reversed the Board of Review and found Amy C. Frato eligible for unemployment benefits was contrary to law."

■ In the first assignment of error, appellants contend that the trial court erred in substituting its judgment in place of the board of review's judgment, contrary to the standard of review set forth in R.C. 4141.28.

R.C. 4141.28(O) provides, in pertinent part:

"The appeal shall be heard upon such record certified by the board. * * * If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision."

Ohio courts have established that the role of the common pleas court when the appeal is based on factual grounds is limited to determining whether the board's decision is supported by evidence in the record. In *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 244, 463 N.E.2d 1280, 1282, the Court of Appeals for Franklin County held:

"The resolution of purely factual questions is for the board of review and its referees as triers of the facts. *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167, 170, 76 N.E.2d 79, 83]. The role of the court of common pleas, upon an appeal based on factual grounds, is limited to determining whether the board's decision is supported by evidence in the record. *Kilgore v. Bd. of Review* (1965), 2 Ohio App.2d 69, 71 [31 O.O.2d 108, 109, 206 N.E.2d 423, 424]. The court may not substitute its judgment for that of the board; it may not reverse simply because it interprets the evidence differently than did the board. *Fahl v. Bd. of Review* (1965), 2 Ohio App.2d 286 [31 O.O.2d 426, 207 N.E.2d 774]; *Kilgore v. Bd. of Review, supra.* Because the statutory standard of review is couched in terms of manifest weight of the evidence, a decision of the board supported by some competent, credible evidence going to all the essential elements of the controversy will not be reversed by a reviewing court as being against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]. * * * "

The Court of Appeals for Cuyahoga County, however, has concluded that it is the responsibility of reviewing courts to reverse board of review rulings which reach unreasonable conclusions based on essentially undisputed evidence. In *Wilson v. Bd. of Review* (1984), 14 Ohio App.3d 309, 311, 14 OBR 374, 376, 471 N.E.2d 168, 170, the court held:

" * * * Where * * * the referee has no conflicting testimony and evidence, the referee's decision may be reversed if no substantial evidence supports it.

See *Kubelka v. Bd. of Review* (Jan. 25, 1979), Cuyahoga App. No. 38098, unreported."

Similarly, in *Opara v. Carnegie Textile Co.* (1985), 26 Ohio App.3d 103, 105–106, 26 OBR 312, 314–316, 498 N.E.2d 485, 488–490, the court stated:

" * * * [T]he courts should reverse an agency's ruling which reaches an unreasonable conclusion from essentially undisputed evidence at the administrative hearing. *Griffith v. Administrator* (Dec. 27, 1984), Cuyahoga App. No. 48301, unreported [1984 WL 6397]. That determination requires less deference to the agency because it resolves the legal effect of unchallenged facts rather than the existence of such facts. Cf. *Sellers v. Bd. of Review* (1981), 1 Ohio App.3d 161 [1 OBR 473, 440 N.E.2d 550]; *Kubelka v. Bd. of Review* [*supra* ]."

The *Carnegie* court was distinguishing questions of fact from questions of law and decided that less deference should be afforded the board of review when the question raised is one of law.

In the present case, whether appellee quit or was constructively laid off is a question of law and, as such, the trial court had a duty to reverse the decision of the board of review if the board reached an erroneous conclusion.

■ The facts in the instant cause were essentially undisputed. The employer's maternity leave policy is set forth in a written document that speaks for itself. The parties do not dispute the proper procedure to be followed. Only two witnesses testified at the hearing, and only one of those, appellee, had personal knowledge of the events that led to her separation from Radio Shack. The other witness began working at Radio Shack after the incidents in question occurred. Appellee's testimony was totally unrefuted.

The central question presented is whether appellee complied with Radio Shack's maternity leave procedure. Appellee testified that she obtained the medical release allowing her to return to work and was prepared to deliver it to her supervisor at Radio Shack. Zucker did not ask to see the release but, instead, refused to set a return date and continually made excuses why appellee could not return to work.

The board of review reasoned that, because appellee never actually delivered the medical release to Radio Shack, she had not complied with the proper procedure and, therefore, her separation qualified as a voluntary termination without just cause. The trial court reversed the decision of the board of review, finding that appellee's offer to deliver the medical release and Zucker's lack of interest in receiving it met the requirements of the employee's

handbook. The court concluded that appellee was constructively laid off and forced to relocate in order to support herself and her child.

In *Angelkovski, supra,* the court held that an appellate court may reverse the decision of the common pleas court only upon a showing of abuse of discretion. The court stated:

" * * * In this context, the meaning of the term 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." *Id.,* 11 Ohio App.3d at 161–162, 11 OBR at 243–244, 463 N.E.2d at 1282–1284.

Appellant has failed to show that the trial court's decision was clearly wrong. It is apparent that appellee was ready, willing and able to return to work, but was denied that opportunity by her employer. Appellant's first assignment of error is without merit.

In the second assignment of error, appellant asserts that the trial court's decision was contrary to law. Specifically, appellant argues that a claimant who quits employment without just cause is not entitled to unemployment benefits. Appellant contends that appellee voluntarily quit and, therefore, the trial court's decision was erroneous.

Appellant's argument would be well taken if it were not for the conclusion reached in the first assignment of error. If appellee had not attempted to return to work, if she had not attempted to tender her medical release, and if appellee's superior had not led her to believe that a position might never become available, it is clear that appellee would not have moved to Florida and submitted her letter of resignation.

The non-reinstatement of appellee was caused by the actions of Radio Shack in general and Spin Zucker in particular. Appellee only resorted to moving out of state after being frustrated by Radio Shack and its agent in her attempt to regain her position as provided for by the rules in the employee's handbook. After waiting as long as she possibly could, it became necessary for appellee to take such drastic action in order to support her newborn baby. Appellant's argument is, therefore, without merit.

■ Under the second assignment of error, appellant also claims that the trial court erred in reversing the board of review's decision that appellee quit her contemporaneous employment at Berg's without just cause.

Actually, the trial court did not reverse the board on this point. As the trial court stated with respect to appellee's separation from Berg's, " * * * [r]eliable, credible evidence exists in support of the referee's finding that Frato

voluntarily quit employment at Berg's. Standing alone, the denial of benefits would be proper." The trial court proceeded, however, to explain that it was not necessary for the referee to examine the reason for appellee's separation from Berg's. R.C. 4141.28(D)(1), as in effect at that time, required that the administrator first look to the claimant's most recent separation:

"The administrator or his deputy shall examine the first claim for benefits filed in any benefit year, and any additional claim, and on the basis of any facts found by him shall determine whether division (D) of section 4141.29 of the Revised Code is applicable to the claimant's most recent separation and, to the extent necessary, prior separations from work, and whether such claim shall be allowed or disallowed.  * * * " (141 Ohio Laws, Part II, 3036, 3043.)

If the most recent job meets the requirements, the investigation ends. *Noaks v. ITT Jabsco* (June 14, 1985), Clark App. No. 2069, unreported, 1985 WL 8725.

In the case *sub judice*, the separation from Radio Shack meets the statutory requirements for obtaining benefits. Appellee left her job at Berg's on May 21, 1988. Radio Shack, however, considered appellee's letter received on July 23, 1988 as her letter of resignation and, therefore, that was the date of her termination. Thus, it was not necessary to examine the circumstances surrounding the separation from Berg's.

Appellant's second assignment of error is overruled.

Based on the foregoing analysis, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and NADER, J., concur.