OPINION
{¶ 1} In this accelerated calendar case, appellant, Richard B. Robb, appeals from the judgment entered by the Lake County Court of Common Pleas. In an administrative appeal, the trial court affirmed the decision from the Unemployment Compensation Review Commission ("Review Commission").
 {¶ 2} Robb was employed as a van driver at Quail Hollow Resort. In December 2000, Robb was laid off due to lack of work. Robb applied for unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS"). Benefits were allowed, and Robb began receiving unemployment compensation on January 8, 2001.
 {¶ 3} In February 2001, a friend informed Robb of an employment opportunity at a local E-Check facility. On February 12, 2001, Robb was hired as a trainee by Envirotest Systems Corp., the company that operates Ohio's E-Check facilities.
 {¶ 4} Robb substantially completed an initial fifty-six hour training program. The training included instruction in three different positions: (1) initially greeting the customers and entering data into a computer, (2) driving the car into the station and onto the testing machine, and (3) collecting payment from customers. However, even after completing the majority of this program, Robb still had difficulty performing any of the positions at the E-Check station.
 {¶ 5} Robert Bigley, the station manager at the E-Check station, called Robb into his office to discuss Robb's employment situation. During this meeting, both parties acknowledged that Robb did not have the ability to adequately perform the duties of any of the positions at the E-Check facility. Mr. Bigley suggested that Robb resign. Robb signed a resignation form on February 26, 2001.
 {¶ 6} Robb applied to resume his unemployment benefits. The administrator initially found that Robb was let go for lack of work. The benefits claim was allowed.
 {¶ 7} The employer appealed on the grounds that Robb had quit the job. On April 6, 2001, the administrator's initial decision was vacated. Thereafter, on April 10, 2001, the administrator issued a new decision, finding that Robb was terminated without cause. The benefits were still allowed.
 {¶ 8} A director's redetermination was issued on April 20, 2001. Therein, it was determined that Robb was discharged because he was not able to learn or perform the work required. However, the claim was still allowed. The redetermination indicates the evidence presented did not establish enough fault on Robb's behalf to find that the termination of benefits was justifiable.
 {¶ 9} The employer appealed the redetermination. The case was transferred to the Review Commission. A hearing was held, and testimony was taken from Robb and Mr. Bigley. Following the hearing, on June 15, 2001, the hearing officer reversed the director's redetermination of April 20, 2001, finding that Robb had quit the job without just cause.
 {¶ 10} Robb filed a request for review, asking the Review Commission to reconsider the hearing officer's decision. On August 7, 2001, the Review Commission disallowed Robb's request for review.
 {¶ 11} On September 4, 2001, Robb appealed the decision of the Review Commission to the common pleas court. The trial court affirmed the decision of the Review Commission. The trial court found that there was sufficient evidence to support a finding that Robb quit his job without just cause. In addition, the trial court noted that, had Robb not quit, the employer would be justified in terminating him for just cause, due to Robb's inability to perform the job.
 {¶ 12} Robb has timely appealed the judgment of the trial court. He raises two assignments of error. His first assignment of error is:
 {¶ 13} "The common pleas court erred in failing to rule that the denial of appellant's claim for unemployment compensation benefits was unlawful, unreasonable, and against the manifest weight of the evidence."
 {¶ 14} "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence."[1]
 {¶ 15} The hearing officer found that "while the employer may have suggested to claimant that he resign, there was no evidence to indicate that he was forced to do so. Claimant was given no ultimatums and was not told what would happen if he elected not to sign the resignation form." Likewise, the trial court found, "[Robb] was neither threatened, nor told what would happen if he chose not to sign."
 {¶ 16} We respectfully disagree with the conclusion reached by the trial court, the hearing officer, and the Review Commission. The testimony of Mr. Bigley at the hearing contradicts the findings of the hearing officer and the trial court.
 {¶ 17} Mr. Bigley testified that he did not have the ability to fire Robb and, if Robb chose not to sign the resignation form, he would have called a supervisor at the Twinsburg office. He also testified that he would not have put Robb on the schedule until further instruction from his supervisor. In addition, the following colloquy occurred during the direct examination of Mr. Bigley:
 {¶ 18} "Q. Okay. Before you asked him to sign the [resignation] form, did you tell him that . . . did you tell him that he would probably be fired or that you would recommend that he be fired?
 {¶ 19} "A. I may have stated that. I may have stated that. Yes, I may have stated that he may have . . . that he might have been let go. I may have stated that, yes. I'm quite sure that it may have happened that way that he would have probably been asked to leave. We have a policy, 90 day probation policy."
 {¶ 20} Robb testified that he had no intention of quitting when he was called in to Mr. Bigley's office. In fact, he testified that "[t]he only thing running through my mind was would Bob allow me to stay on."
 {¶ 21} This evidence clearly contradicts the hearing officer's finding that Robb voluntarily quit his employment. Robb was called into the station manager's office. Robb testified that he was very nervous about being called in and that he was worried that he would be fired. These emotions are not consistent with an employee who is planning to voluntarily resign.
 {¶ 22} The comments of Mr. Bigley also provide insight into Robb's state of mind. Mr. Bigley testified that he "may have" told Robb that he would be fired, or that he would recommend that Robb be fired, if Robb did not sign the resignation form. Therefore, Robb had the understanding that there were two options: (1) he could agree with Mr. Bigley that the employment relationship was over and sign the form; or (2) he could go through the additional time, inconvenience, and embarrassment of a termination. For practical purposes, there was no option.
 {¶ 23} In Daugherty v. Bur. of Emp. Serv., an individual was working for a company, which had a new rule that two individuals, married to each other, could not both work for the company.[2] The claimant was engaged to be married to a co-worker in August. The owner of the company advised her to quit. She actually quit in June. The hearing officer found that she quit without just cause. However, the trial court and, subsequently, this court held that appellant had just cause to quit because she was told to quit.[3]
 {¶ 24} In Frato v. Ohio Bur. of Emp. Serv., the board of review found that the claimant quit without just cause.[4] The claimant had taken maternity leave. A month later, she informed her supervisor that she was ready to return to work. Her supervisor was unable to immediately return her to work, because the replacement was still employed and there was a lack of work. This went on for one month. Finally, the claimant informed her supervisor that she was quitting. The trial court and this court held that the claimant was constructively laid off, as she was ready and willing to return to work, but the employer did not allow her to return.[5]
 {¶ 25} Both of these cases are factually similar to the case at bar. In these cases, employees quit after express or implied statements from the employer that the employment relationship expired. InDaugherty, the employer told the employee that she would be terminated and suggested that she quit.[6] In the case sub judice, Mr. Bigley suggested to Robb that he quit. Moreover, he "may have" told Robb that he would be terminated if he did not quit.
 {¶ 26} The evidence presented at the hearing indicates that Robb was under the belief that he would be fired if he did not quit. Under this situation, a resignation cannot be considered voluntary. The determination of the hearing officer and, ultimately, the Review Commission was unreasonable and against the manifest weight of the evidence.
 {¶ 27} Robb's first assignment of error has merit.
 {¶ 28} Robb's second assignment of error is:
 {¶ 29} "The Review Commission erred in failing to consider whether the employer had just cause for laying off or constructively discharging the appellant; and the common pleas court erred in finding that Mr. Robb's inability to do the work constituted fault sufficient to disqualify him from receiving unemployment benefits."
 {¶ 30} "An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change substantially since the date of original hiring for that particular position."[7]
 {¶ 31} The decision dated April 10, 2001 specifically found that at least one of the factors of the four-prong test had not been met. In addition, it included the following language, "[a] review of the facts establishes that there was not enough fault on the part of the claimant in his/her acts, omissions or course of conduct that an ordinary person would find the discharge justifiable." The April 20, 2001 director's redetermination also found that the evidence presented did not establish enough fault on the claimant to support a justifiable discharge.
 {¶ 32} The hearing officer and the Review Commission did not address this issue. The only conclusion reached by the hearing officer was that Robb voluntarily quit. Robb asserts that the Review Commission erred by not considering whether the employer had just cause to discharge him. We disagree. The hearing officer found that Robb had voluntarily quit. Having made that finding, it would have been illogical to address whether the discharge was justified. A finding regarding the nature of the discharge would have been entirely inconsistent with the finding that Robb voluntarily quit.
 {¶ 33} However, during its limited review, the trial court not only affirmed the finding of the Review Commission that Robb quit but, also, added "even if" language indicating that "had [Robb] not voluntarily quit, his employer could have discharged him for just cause due to his inability to perform the job." The trial court exceeded its scope of review by adding an additional finding that was not addressed by the Review Commission or the hearing officer.
 {¶ 34} The common pleas court, as a reviewing court, was "not permitted to make factual findings or determine the credibility of the witnesses."[8] The trial court was engaged in fact finding when it determined that the discharge was justifiable. There had been no previous finding that the discharge was justifiable. The trial court, on its own initiative, chose to address an issue that was not addressed by the hearing officer or the Review Commission. Accordingly, the trial court was not reviewing a determination by the Review Commission but, rather, engaged in independent fact finding.
 {¶ 35} Not only should the trial court not have addressed this issue, but we disagree with the trial court's analysis. Specifically, factors two and three of the Tzangas test require that the employer have reasonable expectations of the employee.[9] However, Robb's employment was terminated only fourteen days after he was hired. Robb had never performed this type of work before. The facts of this matter are readily distinguishable from the facts of Tzangas, where a legal secretary was terminated because she was continuing to make errors after nine months of employment and had been previously reprimanded on two occasions.[10]
 {¶ 36} Robb's second assignment of error has merit.
 {¶ 37} The judgment of the trial court finding that, in the alternative, the employer had just cause to terminate Robb is reversed. In addition, the judgment of the trial court affirming the Review Commission's finding that Robb voluntarily quit is reversed. This matter is remanded to the trial court, in order for the trial court to reverse the decision of the Review Commission and to remand the matter to the Review Commission to allow the benefits.
Donald R. Ford, P.J., and Cynthia Westcott Rice, J., concur.
[1] Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, paragraph one of the syllabus.
[2] Daugherty v. Bur. of Emp. Serv.(1984), 21 Ohio App.3d 1.
[3] Id.
[4] Frato v. Ohio Bur. of Emp. Serv. (1991), 77 Ohio App.3d 193.
[5] Id.
[6] Daugherty v. Bur. of Emp. Serv., 21 Ohio App.3d at 2.
[7] Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.,73 Ohio St.3d 694, paragraph four of the syllabus.
[8] Id. at 696, citing Irvine v. Unemp. Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17-18.
[9] Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.,
supra.
[10] Id.