JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Elliott D. Fisher ("Fisher"), appeals from the judgment of the Common Pleas Court that affirmed the finding of the Unemployment Compensation Review Commission (the "Commission") that he quit his job without just cause and is therefore not entitled to unemployment benefits. We affirm.
 {¶ 2} Fisher filed an application for unemployment compensation benefits for the week ending February 14, 2004. Appellee Director, Ohio Department of Job and Family Services, denied the claim, finding that Fisher quit his employment without just cause and was not entitled to benefits. Fisher appealed this determination; the Director subsequently reversed the initial determination and found that Fisher was separated from employment due to lack of work. The Employer appealed the redetermination decision and Appellee transferred jurisdiction to the Commission, which assigned the matter to a hearing officer.
 {¶ 3} Fisher and William Lake, the owner and former president of Bill Lake Buick, testified at the hearing. Fisher was employed as a used car manager at Bill Lake Buick from February 5, 2000 to January 14, 2004. Lake testified that at the recommendation of a consultant, in December 2003, he and his son, Greg Lake, president of Bill Lake Buick, began reorganizing the management structure at the dealership. At that time, the dealership had a general sales manager, who worked part-time, a new car manager and a used car manager (Fisher). Because the general sales manager was retiring, William and Greg Lake decided to combine his duties with those of the new car and used car managers into one full-time position.
 {¶ 4} Lake testified that Fisher was offered the position of general sales manager, but declined the offer because "he was afraid he couldn't do it." Consequently, in early January 2004, Bill Lake Buick hired a new general sales manager. According to William Lake, Fisher was asked to train the new manager and his pay structure did not change during this training period. Lake testified further that he had no intention of terminating Fisher's employment, although the dealership had not yet determined what his new job or pay under the new general sales manager were going to be. According to Lake, "we were trying to figure out how we were going to organize from that position down. * * * We weren't sure yet because the new guy had just started. And so we didn't really know what was going to happen. * * * It was a work in progress."
 {¶ 5} Around the same time as the new general sales manager was hired, the dealership eliminated its policy of allowing its managers and sales people to drive "demonstrator cars." Instead, it allowed these employees to lease a new car or purchase certain used cars from the dealership at a substantially reduced price. An employee was required to wait at least 30 days after the dealership took a car in trade and then, if the car had not sold off the lot, the employee could negotiate a purchase price for it at $100 or $200 over cost.
 {¶ 6} Lake testified that he and Fisher spoke several times about Fisher's purchase of a Mercedes which the dealership had just taken in trade and for which it had paid the owner $2650. Lake told Fisher that he would have to pay $3500 to buy it. Unknown to William Lake, however, Fisher then spoke with Greg Lake, who agreed that he could buy the Mercedes for $100 over cost.
 {¶ 7} On January 14, 2004, William Lake was in his office at the dealership and learned that Fisher had put through a deal to purchase the Mercedes for $100 over cost. Lake asked the title clerk at the dealership to stop the deal, which she did. When Fisher learned from an employee of the title company that the deal had been stopped, he became upset, told the new general sales manager that he was quitting and left. Two days later, Bill Lake Buick sold the Mercedes to another buyer for $5000.
 {¶ 8} Fisher denied that the dispute over his purchase of the Mercedes was related to his termination. He insisted that his job had been eliminated, although he admitted that no one had told him that January 14th would be his last day of employment. Furthermore, he agreed that he could have remained working at Bill Lake Buick, although not in his prior position as used car manager. He further agreed that as of January 14, 2004, "nobody's pay plan had really changed" because "we were told that we would still be paid as long as we had agreed to train the new general sales manager." Finally, he agreed that Bill Lake Buick had offered him the position of general sales manager, but admitted that he had expressed some reservations to Greg Lake about his ability to manage the same sales people who had taught him how to sell cars.
 {¶ 9} Fisher testified that he was "in limbo" after the new general sales manager was hired, because no one told him what his new job at the dealership was going to be. Upon questioning by William Lake, he admitted that he walked away from his job in anger:
 {¶ 10} "Q. At the time you quit exactly what your title was was in limbo. But at the time you quit, you did not give notice. You were not told that the day that you quit was the day you were supposed to leave. You got mad, and correct me if I'm wrong, when you found out about me stopping the title of this car and you walked out? You didn't give notice to Greg. You didn't tell me. You told Mike and you stormed out the door. And that was the * * * that was the end of it. * * * Is that true or not?
 {¶ 11} "A. Yes, that's true."
 {¶ 12} On June 16, 2004, the hearing officer issued a written decision modifying the Director's redetermination. The hearing officer concluded that Fisher quit his employment without just cause when he "became upset because the owner stopped the sale of a Mercedes that had been taken in a trade, that claimant had arranged to sell to himself for $100 over cost." Accordingly, the hearing officer determined that Fisher was not entitled to unemployment compensation benefits.
 {¶ 13} The Review Commission subsequently disallowed Fisher's request for review. Fisher then filed an appeal with the Common Pleas Court, which affirmed the Commission's decision. Fisher timely appealed the trial court's judgment.
 {¶ 14} For clarity, we consider Fisher's arguments out of their assigned order. In his second assignment of error, Fisher contends that the trial court erred in affirming the Commission's decision because the employer offered only hearsay evidence at the hearing.
 {¶ 15} Initially, we disagree with Fisher's argument that William Lake's testimony at the hearing was only hearsay. Lake testified that he was at his office at the dealership on January 14, 2004, and, upon learning that Fisher had put through a deal to sell the Mercedes to himself at $100 over cost, asked the title clerk to stop the deal. Thus, Lake had personal knowledge of the events which led to Fisher quitting his job and his testimony regarding those events was obviously not hearsay. William Lake also testified that he and his son Greg had extensive discussions regarding the reorganization of the dealership. Thus, as the owner of the dealership, William Lake had personal knowledge that Fisher's position in the reorganized dealership had not yet been determined and his testimony regarding these issues was also not hearsay.
 {¶ 16} Furthermore, even if some of Lake's testimony were hearsay, such testimony is admissible at administrative hearings. R.C. 4141.281(C)(2) governs the conduct of hearings in administrative appeals and states, "Hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure." In reviewing this language, found in former R.C. 4141.28(J), the Supreme Court of Ohio stated:
 {¶ 17} "This court previously has not analyzed this specific segment of R.C. 4141.28(J), however, its meaning is apparent: the Board of Review and the referee need not apply stringent rules in determining the admissibility of evidence into the record. The logical corollary is such evidence placed in the record is not only admissible but also must be weighed and considered when making a decision. If evidence which is inadmissible in a court of law is to be disregarded when and if reviewed, there is no reason to admit such evidence at the administrative level or for purposes of subdivision (J) of R.C. 4141.28." Simon v. LakeGeauga Printing Co. (1982), 69 Ohio St.2d 41, 43.
 {¶ 18} Thus, as this court has recognized:
"It is well settled that a referee may use hearsay evidence in making unemployment compensation decisions. `As a general rule, administrative agencies are not bound by the strict rules of evidence applied in a court. The hearsay rule is relaxed in administrative hearings; however, the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner.'"Cully v. Administrator (Oct. 13, 1994), Cuyahoga App. No. 66187, quoting Haley v. Ohio State Dental Bd. (1982),7 Ohio App.3d 1, 6.
 {¶ 19} In Taylor v. Bd. of Review (1984),20 Ohio App.3d 297, this court found that it is unreasonable to give credibility to a hearsay statement and deny credibility to the claimant testifying in person where the sworn testimony of the claimant is contradicted only by hearsay testimony. Fisher argues that we should follow Taylor in this case and find his sworn testimony credible while disregarding William Lake's testimony as hearsay.
 {¶ 20} Taylor is easily distinguishable from this case, however. Unlike Taylor, not all of William Lake's testimony was hearsay. Furthermore, in an administrative hearing such as this, the fact-finder is not required to blindly accept sworn testimony over otherwise inadmissible evidence. Hansman v. Director,ODJFS, Butler App. No. CA2003-09-224, 2004-Ohio-505. Rather, the duty of the fact-finder is to weigh and consider the reliability of the evidence and the credibility of the witnesses. Id. See, also, Simon, supra.
 {¶ 21} The irony of Fisher's argument is that he asks us to disregard William Lake's testimony as hearsay and find that other hearsay evidence in the record (logs of telephone conversations between an examiner for the Office of Unemployment Compensation and the employer) is more credible. We refuse to do so. We find nothing in this record to indicate that the hearing officer exercised his discretion to consider hearsay testimony in an arbitrary manner and, further, we find no error in the hearing officer's decision to give weight to such evidence.
 {¶ 22} Appellant's second assignment of error is therefore overruled.
 {¶ 23} In his first assignment of error, Fisher contends that the trial court erred in affirming the denial of unemployment benefits because he did not quit his employment with Bill Lake Buick but was laid off because his job had been eliminated.
 {¶ 24} Unlike most administrative appeals where we employ an abuse of discretion standard, see Lorain City School Dist. Bd.of Educ. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257,260-261, our standard of review on appeal from a decision of the Commission is the same as that of the Common Pleas Court. This court "may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.,73 Ohio St.3d 694, 696, 1995-Ohio-206. In making this determination, we must give deference to the Commission in its role as finder of fact. Irvine v. Unemployment Comp. Bd. of Rev.
(1985), 19 Ohio St.3d 15, 18. We may not reverse the Commission's decision simply because "reasonable minds might reach different conclusions." Id. On close questions, where the board might reasonably decide either way, we have no authority to upset the agency's decision. Id. Instead, our review is limited to determining whether the Commission's decision is unlawful, unreasonable, or totally lacking in competent, credible evidence to support it. Id. A judgment supported by some competent, credible evidence going to all the essential elements of the controversy will not be reversed by a reviewing court as being against the weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279.
 {¶ 25} R.C. 4141.29(D)(2)(a) provides that an individual may not obtain unemployment benefits if he "quit his work without just cause." Traditionally, just cause is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Irvine, supra, at 17. The determination of whether just cause exists depends on the "unique factual considerations" of a particular case and is, therefore, primarily an issue for the trier of fact. Id.
 {¶ 26} Fisher argues that the trial court erred in affirming the decision of the Review Commission because it contained several factual errors. Specifically, Fisher contends that, contrary to the decision, he was not still working as the used car manager and receiving his salary while the new general sales manager was being trained and he was not offered the general sales manager position. Fisher stridently contends that, contrary to the Commission's recitation of the facts, the "only evidence introduced at the hearing" and the "only evidence in the record" demonstrates that his position was terminated prior to January 14, 2004. We disagree.
 {¶ 27} Our review of the record indicates that Fisher was, in fact, no longer working as the used car manager after the general sales manager was hired. However, the record also indicates that Fisher admitted that as of January 14, 2004, his pay structure had not yet changed. Despite Fisher's argument to the contrary, the record clearly indicates that Fisher's last check from Bill Lake Buick was for "a mere $37" because the dealership deducted from the check the monies Fisher owed it for a loan, not because his compensation had been "drastically reduced." The record also reflects that, although Fisher was no longer the used car manager, the dealership had no intention of terminating his employment and Greg Lake had told Fisher that he would still have a job, as yet unspecified, at the dealership, although it would likely be at a lower pay rate. Finally, the record demonstrates that, although Fisher may not have formally interviewed for the position of general sales manager, he was offered the job but turned it down. During the hearing, Fisher testified, "The job was offered to me. I did speak with Greg Lake about it. I had some reservation about how effective I would be within a sales staff of people that taught me how to sell cars."
 {¶ 28} In light of this evidence, it is apparent that the immediate cause of Fisher's separation from employment was his actions, not those of the dealership. Indeed, Fisher admitted at the hearing that no one had told him that January 14, 2004 was his last day of employment, but, on that day, when he found out that William Lake had stopped the sale of the Mercedes to him, he got mad and quit.
 {¶ 29} This case is easily distinguishable from those cited by Fisher. In Robb v. Director, Lake App. No. 2002-L-060,2003-Ohio-6972, the employee was found to have quit with just cause when his employer told him that he would be fired if he did not resign. Likewise, in Daugherty v. Admin. (1984),21 Ohio App.3d 1, the court found it apparent that the employee had just cause to quit because, when she announced that she planned to marry a co-worker, her employer advised her to quit because two persons married to each other could not work at the store. Similarly, in Frato v. Ohio Bur. of Employment Serv. (1991),77 Ohio App.3d 193, the court determined that the employee quit with just cause because, when she attempted to return to work from maternity leave, her employer refused to set a return date and continually made excuses as to why she could not return to work.
 {¶ 30} Fisher was not asked to resign. In fact, he was offered the position of general sales manager, but turned it down. Even after he turned it down, he was told that he would continue to have a job at the dealership. As of the day that he quit, Fisher's pay had not changed. The inescapable conclusion is that Fisher quit his job without a justifiable reason.
 {¶ 31} Fisher admitted that he quit his job because he was angry that William Lake had stopped his purchase of the Mercedes. Generally, an employee who quits his job because of a problem with working conditions must make reasonable efforts to solve the problem before quitting. Roach v. Administrator (July 20, 2000), Cuyahoga App. No. 76661, citing DiGiannantoni v.Wedgewater Animal Hosp., Inc. (1996), 109 Ohio App.3d 300, 308. The employee must attempt to notify the employer of the problem and give the employer an opportunity to correct the problem. Id. Fisher offered no evidence that he made any attempt to resolve the dispute about the Mercedes before he walked off the job in anger. Accordingly, he quit without just cause and, therefore, is not entitled to unemployment benefits.
 {¶ 32} Appellant's second assignment of error is overruled. Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Corrigan, J., concur.