**BILES, Appellant,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.**

[Cite as *Biles v. Ohio Bur. of Emp. Serv.* (1995), 107 Ohio App.3d 114.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95–CA–25.

Decided Oct. 25, 1995.

*Martin, Browne, Hull & Harper, Steven J. McCready* and *Michael C. Weaver,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Joseph J. Zaccaria,* Assistant Attorney General, for appellees.

FREDERICK N. YOUNG, Judge.

Carolyn L. Biles (appellant) is appealing from the decision of the Common Pleas Court of Clark County, Ohio, which affirmed the decision of the Unemployment Compensation Board of Review denying her unemployment compensation benefits after she left the employment of Monte Zinn Chevrolet in Springfield, Ohio.

The appellant's initial application for benefits was denied by the bureau with the following statement:

"Claimant quit Monte Zinn Chevrolet Co., Inc. when she thought her position was eliminated and then packed her possessions and left the building without

discussing the situation with her employer. This is a quit without just cause as claimant created her own unemployment. Claimant is ineligible for benefits for the duration of unemployment caused by this quit."

Appellant, by then represented by counsel, filed an application for reconsideration, which was denied on November 18, 1992. She filed an appeal to the Unemployment Compensation Board of Review, which held a hearing on March 26, 1993, where both the appellant and Monte Zinn, owner of Monte Zinn Chevrolet, appeared with counsel and testified. The facts of the matter were found and set forth by the hearing officer in his decision as follows:

"FINDINGS OF FACT

"Claimant worked for Monte Zinn Chevrolet Company, Inc. from September 8, 1990, through September 28, 1992. Claimant's title was Customer Relations Manager.

"In late May and June, 1992, claimant was off work six weeks due to breast cancer surgery. Shortly before she was to return to work, claimant noticed an ad in a local Springfield newspaper for a customer relations manager position for Monte Zinn Chevrolet Company, Inc.. The ad described claimant's duties. In addition, the ad made reference to also working for a Toyota dealership owned by Monte Zinn.

"When claimant returned to work she questioned Mr. Zinn concerning the ad. Mr. Zinn informed claimant that he was thinking about making changes and he believed a man might be better suited for the position of customer relations manager. Mr. Zinn expected the individual to have more contact with body shop personnel and mechanics than claimant had been doing. While claimant had contact with those two areas, Mr. Zinn believed additional contact was necessary. Claimant was not informed that she would not have a job with Monte Zinn Chevrolet Company, Inc.

"In mid-September, 1992, claimant took a one week vacation. When claimant returned from vacation on Monday, September 2[8], 199[2], claimant found that another individual was in her office at her desk. The other individual, Rob Koons, informed claimant that he had been promoted to the position of customer relations manager. Claimant believed that she had been replaced by Mr. Zinn. Claimant spoke with the general manager, Steve Lowery. Claimant was instructed to see Mr. Zinn at approximately 9:00 a.m. Claimant spoke with Mr. Zinn in his office. Claimant was told by Mr. Zinn that she should return in the afternoon to discuss her status with the company. Claimant was not informed that she was discharged by Mr. Zinn.

"Claimant did not return to see Mr. Zinn in the afternoon. Claimant made no contact with the company after September 28, 199[2]. Claimant believed she had

been replaced by a less qualified male and that she had been discharged by the employer.

"Mr. Zinn has testified that he had planned to move claimant to another position with no change in her rate of pay or hours. When claimant failed to return, the employer considered she had quit her employment.

"Claimant has argued that she was constructively discharged by Monte Zinn Chevrolet Company, Inc. when her position was given to a less qualified male. Claimant has argued that she was discriminated against by Monte Zinn Chevrolet Company, Inc. based on her gender. Claimant quit employment with Monte Zinn Chevrolet Company, Inc. before the employer was given the opportunity to describe to claimant her new position. Claimant's actions in leaving the dealership and not returning after she was aware that Mr. Zinn wished to speak with her about her new duties were not the actions of a reasonably [*sic*] individual."

The hearing officer affirmed the decision of the bureau denying appellant unemployment compensation pursuant to R.C. 4141.29(D)(2)(a), which provides that no individual may be paid benefits if the Administrator finds that the applicant quit his or her work "without just cause." The hearing officer stated his reasons as follows:

"Claimant quit employment with Monte Zinn Chevrolet Company, Inc. when she believed she had been replaced unfairly by a less qualified male. Claimant's actions in quitting her employment before finding out what her new assignment with the employer might be were not the actions of a reasonable individual. Claimant quit employment with Monte Zinn Chevrolet Company, Inc. without just cause."

After her application for a further appeal was denied, Biles timely filed an appeal to the common pleas court pursuant to R.C. 4141.28(O). That section sets forth the standard of review by the common pleas court as follows:

"If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. Any interested party shall have the right to appeal from the decision of the court as in civil cases."

The Clark County Common Pleas Court heard oral arguments on the matter on September 8, 1994, received briefs of counsel representing both parties, and on January 25, 1995, affirmed the decision of the Unemployment Compensation Board of Review with the following entry:

"This cause is before the Court on Plaintiff's appeal from the decision of the State of Ohio Unemployment Compensation Board of Review mailed October 7, 1993, disallowing Claimant–Appellant's application for unemployment benefits.

"Upon review of the record, including the records of Appellee–Ohio Bureau of Employment Services, and arguments of counsel, the Court does not find that the decision was unlawful, unreasonable or against the manifest weight of the evidence."

It is from that decision that appellant's timely appeal is before us.

Initially, we must determine our proper standard of review of the decision of the common pleas court in an unemployment compensation case. Until very recently, it seemed to be settled law in Ohio that the standard of review was abuse of discretion. In other words, an appellate court could not overturn a decision of the common pleas court upholding, or overruling, a decision of the board of review, unless it found that the court had abused its discretion in finding that the board's decision itself was either unlawful, unreasonable, or against the manifest weight of the evidence, or not so, pursuant to the standard of review set forth in the Revised Code, as quoted above. The seminal case on this issue is *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. In *Angelkovski* the Court of Appeals for Franklin County carefully explained the role of both the common pleas court and a reviewing court in judging actions of the board of review as follows:

"The resolution of purely factual questions is for the board of review and its referees as triers of the facts. *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167, 170, 76 N.E.2d 79, 83–84]. The role of the court of common pleas, upon an appeal based on factual grounds, is limited to determining whether the board's decision is supported by evidence in the record. *Kilgore v. Bd. of Review* (1965), 2 Ohio App.2d 69, 71 [31 O.O.2d 108, 109, 206 N.E.2d 423, 424]. The court may not substitute its judgment for that of the board; it may not reverse simply because it interprets the evidence differently than did the board. *Fahl v. Bd. of Review* (1965), 2 Ohio App.2d 286 [31 O.O.2d 426, 207 N.E.2d 774]; *Kilgore v. Bd. of Review, supra.* Because the statutory standard of review is couched in terms of manifest weight of the evidence, a decision of the board supported by some competent, credible evidence going to all the essential elements of the controversy will not be reversed by a reviewing court as being against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]. Stated another way, a reviewing court will not reverse on the manifest weight of the evidence where reasonable minds could weigh the evidence and arrive at contrary conclusions. *In re Parker v. Anheuser–Busch* (Jan. 28, 1983 [*sic*, 1982]), Franklin App. No. 81AP–718, unreported [1982 WL 3957].

"The role of an appellate court, in reviewing a determination of a court of common pleas on manifest weight of the evidence on appeal from the board, is different. The function of the court of common pleas, in determining whether the board's decision is against the manifest weight of the evidence, necessarily involves the exercise of sound discretion. Accordingly, an order of the court of common pleas based upon a determination of the manifest weight of the evidence, may be reversed only upon a showing that the court abused its discretion. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376, 262 N.E.2d 685]. In this context, the meaning of the term 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." *Id.*, 11 Ohio App.3d at 161–162, 11 OBR at 244, 463 N.E.2d at 1282–1283.

Two years later, the Ohio Supreme Court dealt with a just cause termination issue in *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587. After first pointing out that the claimant has the burden of proving her entitlement to unemployment benefits on a just cause issue, *id.* at 17, 19 OBR at 14, 482 N.E.2d at 589, the Supreme Court turned to a discussion of what constitutes "just cause" in this area of the law, as follows:

"The term 'just cause' has not been clearly defined in our case law. We are in agreement with one of our appellate courts that '[t]here is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12 [73 O.O.2d 8, 9, 335 N.E.2d 751, 752].

"The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is 'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' " (Emphasis *sic* and citations omitted.) *Id.* at 17, 19 OBR at 14, 482 N.E.2d at 589.

The *Irvine* court then turned to standard of review in such cases as follows:

"The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167, 170, 76 N.E.2d 79, 83–84]. Like other courts serving in an appellate capacity, we sit on a court with

limited power of review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. *Hall v. American Brake Shoe Co.* (1968), 13 Ohio St.2d 11, 13 [42 O.O.2d 6, 7–8, 233 N.E.2d 582, 583–584]. The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore v. Bd. of Review* (1965), 2 Ohio App.2d 69, 71 [31 O.O.2d 108, 109, 206 N.E.2d 423, 424–425]. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. *Craig v. Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260 [38 O.O. 356, 360–361, 83 N.E.2d 628, 634]. Moreover, '[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.' *Charles Livingston & Sons, Inc. v. Constance* (1961), 115 Ohio App. 437, 438 [21 O.O.2d 65, 65–66, 185 N.E.2d 655, 656]." *Irvine, supra,* 19 Ohio St.3d at 17–18, 19 OBR at 15, 482 N.E.2d at 590.

Despite the apparent suggestion in *Irvine* that both the trial court and reviewing courts may reverse decisions of the board only if they are unlawful, unreasonable, or against the manifest weight of the evidence, and the absence of any reference to abuse of discretion, all succeeding decisions that we have found continued to apply the rule that an appellate court reviewing a trial court may reverse the trial court only if it finds an abuse of discretion on its part, while the trial court itself reviews the board's decision under the unlawful, unreasonable, or the manifest weight of evidence standard of review. See, *e.g., Bine v. Bur. of Emp. Serv.* (Oct. 2, 1986), Cuyahoga App. No. 51003, unreported, 1986 WL 11513; *Feldman v. Loeb* (1987), 37 Ohio App.3d 188, 525 N.E.2d 496; *Silberstein v. Bur. of Emp. Serv.* (Sept. 26, 1989), Franklin App. No. 89AP–303, unreported, 1989 WL 110988; *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 577 N.E.2d 720, all of which cases cite *Angelkovski.* In 1994, the Ohio Supreme Court itself seemed to approve the abuse of discretion standard of review when it adopted as its own the opinion of the Wyandot County Court of Appeals, which cited *Hawkins* and *Angelkovski* in holding that the abuse of discretion standard applies to appellate courts in reviewing determinations of a trial court regarding the decisions of administrative boards. *Kennedy v. Marion Corr. Inst.* (1994), 69 Ohio St.3d 20, 630 N.E.2d 324.

A year and half after the *Kennedy* decision, however, the Ohio Supreme Court seemingly implicitly overruled the abuse of discretion standard of review by appellate courts and held that an appellate court may reverse the Unemployment Compensation Board of Review's "just cause" determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207,

paragraph one of the syllabus. The *Tzangas* court cited its previous decision in *Irvine* and stated that the duty to determine whether the board's decision is supported by the evidence in the record "is shared by *all* reviewing courts, from the first level of review in the common pleas court through the final appeal in this court." (Emphasis added.) *Id.* at 696, 653 N.E.2d at 1210.

The *Tzangas* court took no notice of its previous decision in *Kennedy* nor of *Angelkovski* and the line of cases which followed it. Thus, it would seem that according to this latest decision of the Supreme Court reviewing courts are not to review the decision of the trial courts under an abuse of discretion standard, but rather are to review the decisions of the board with the same standard as must be used by the trial court, that is, whether a decision of the board is unlawful, unreasonable, or against the manifest weight of the evidence. We must ask, however, whether this apparent conflict makes any real difference. If we were to find, for instance, that a decision of a board was unlawful, unreasonable, or against the manifest weight of the evidence, we would apparently necessarily find that the trial court abused its discretion in not so holding. On the other hand, if the trial court reverses a decision of the board on those same grounds and we find, disregarding the trial court's decision, that the board was correct under those same standards of review, we would necessarily have found, it seems to us, that the trial court did abuse its discretion in its holding. The applicable standard of review in such cases, therefore, may indeed be only an academic matter, especially since a just cause determination "necessarily depends upon the unique factual consideration of the particular case." *Irvine, supra,* 19 Ohio St.3d at 17, 19 OBR at 15, 482 N.E.2d at 590. We now therefore turn to the particular facts of the case before us.

Appellant first argues that we need not give any weight to the decision of the board of review because it dealt with essentially undisputed facts and therefore the question of whether an employee quits or is constructively laid off with or without just cause is purely a question of law, citing the Lake County Court of Appeals in *Frato v. Ohio Bur. of Emp. Serv.* (1991), 77 Ohio App.3d 193, 601 N.E.2d 564. On the other hand, the Cuyahoga County Court of Appeals has clearly stated that "whether the underlying circumstances surrounding a separation from employment amount to a forced resignation or voluntary quit is a matter for the trier of fact." *Kupresanin v. Ohio Bur. of Emp. Serv.* (June 27, 1991), Cuyahoga App. No. 58798, unreported, 1991 WL 127149.

On the facts of this case, we find it unnecessary to consider or resolve that apparent conflict.

The appellant strenuously argues that she was constructively discharged because she was a subject of sexual discrimination and, therefore, her act in walking away from employment without giving her employer the opportunity to

explain what was really happening was the only self-respecting thing she could do. We first note that a constructive discharge argument does not analytically remove the case from a just cause determination under R.C. Chapter 4141. *Hoeflich v. Bur. of Emp. Serv.* (Dec. 27, 1988), Knox App. No. 88CA000023, unreported, 1988 WL 142300.

While it is certainly true that a pattern of severe sexual discrimination can indeed make an employee's life so intolerable as to amount to a constructive discharge, *Rimedio v. Revlon, Inc.* (S.D.Ohio 1982), 528 F.Supp. 1380, it is also true that merely a perception by the employee that she has been subject to gender discrimination, without affording her employer the opportunity to explain otherwise or rationally justify its course of action, does not convert an unemployment compensation case into a sexual discrimination case. *Krawczyszyn v. Ohio Bur. of Emp. Servs.* (1989), 54 Ohio App.3d 35, 560 N.E.2d 807. The appellant attempts to distinguish *Krawczyszyn* on the grounds that in that case the employee did not pursue an internal grievance procedure with regard to her perceived sexual harassment whereas in the case *sub judice* there was no such grievance procedure because the appellant was dealing directly with the owner of the employer-company. However, the owner here had explicitly given the appellant the opportunity to return and confer with him regarding the circumstances of her employment and she deliberately chose not to take advantage of that opportunity. Had appellant taken the opportunity to meet with Mr. Zinn, she might well have been satisfied that she had not been the subject of sex discrimination nor was she being terminated without just cause. In fact, the hearing officer for the board reported that Mr. Zinn testified that he had planned to move the appellant to another position with no change in her rate of pay or hours.

We perceive no analytical difference between *Krawczyszyn* and the case before us now. See, also, *Wilson v. Ohio Bur. of Emp. Serv.* (Nov. 19, 1986), Summit App. No. 12651, unreported, 1986 WL 13852, holding that the board's determination denying unemployment compensation to an employee was not unlawful, unreasonable or against the manifest weight of the evidence, when the board determined that the employee did not act reasonably in quitting her employment before discussing personal problems (not sexual discrimination or harassment) with her employer, the very same person who was causing her these problems, and giving him an opportunity to remedy the problems.

A case virtually on all fours with the case *sub judice* is *Yates v. Avco Corp.* (C.A.6, 1987), 819 F.2d 630. In *Yates,* a female employee who had in fact been previously sexually harassed by a superior complained to her employer, who took action to remedy the situation and removed the harassing superior from any contact with the female employee. One day when the employee returned to work, however, she found her harasser on the same floor in her workplace and he

falsely told her that he had been assigned to that location. At that point she "reportedly stormed out and made no attempts to contact any Avco officials for an explanation before she delivered her resignation on January 9." *Id.* at 637. When her employer subsequently telephoned her to explain the mix-up she refused to listen to him. The court in *Yates* found that the employee's actions were not reasonable and no constructive discharge had occurred. In the case *sub judice,* the appellant concluded, whether rightly or wrongly, that she was the subject of sexual discrimination in her employment, but refused by her own actions to give her employer an opportunity to correct her perception or to explain an apparent reorganization that was in the process of occurring. Without resorting to an abuse of discretion standard, we find that the decision of the board of review that the appellant acted unreasonably and quit her employment without just cause was not unreasonable, unlawful, or against the manifest weight of the evidence. As the Ohio Supreme Court reiterated in *Tzangas, supra,* the Unemployment Compensation Act exists "to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist" and does not exist to "protect employees from themselves, but to protect them from economic forces over which they have no control." *Id.* at 697, 653 N.E.2d at 1211. If the appellant has a plausible cause of action for sexual discrimination, she is not estopped from bringing it in a *de novo* proceeding in federal court even though we find that she is not entitled to unemployment benefits. *Cooper v. N. Olmsted* (N.D.Ohio 1983), 576 F.Supp. 592.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.