KING, Appellant,

v.

STATE FARM MUTUAL AUTO INSURANCE COMPANY;
Ohio Bureau of Employment Services, Appellee.

[Cite as *King v. State Farm Mut. Auto Ins. Co.* (1996), 112 Ohio App.3d 664.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–376.

Decided July 19, 1996.

*Terry J. Lodge,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Mark S. Barnes,* Assistant Attorney General, for appellee Administrator, Ohio Bureau of Employment Services.

MELVIN L. RESNICK, Judge.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which affirmed the Ohio Unemployment Compensation Board of Review's decision to deny benefits to appellant, Patricia L. King. King sets forth the following assignments of error:

"It is error to affirm as a quit without just cause a resignation for documented medical/psychiatric reasons where the employer has no alternate positions to accommodate the disability.

"It was error for the trial court not to consider the factual circumstances to be constructive discharge."

King began working for State Farm Mutual Auto Insurance Company ("State Farm") in 1987. As of December 1992, when she quit her job, King held the position of secretary.

On March 30, 1993, King applied for benefits under the Ohio Unemployment Compensation Act, R.C. Chapter 4141. On her application, King stated that she "quit for health reasons on dr's recommendations." The administrator allowed

King's claim for benefits. Upon State Farm's motion for reconsideration, the administrator found that King had been separated from her employment due to an illness, entered a finding that she quit her job with just cause and, again, allowed her claim.

State Farm filed an appeal to the Ohio Unemployment Compensation Board of Review ("board"). After a hearing, the hearing officer affirmed the administrator's finding. She further found that State Farm, after learning of King's medical condition, did not offer King an alternate position in its company. State Farm then filed an application for further appeal with the board. The board allowed the appeal, and a second hearing was held.

At the administrative hearings held in this case and in King's letter of resignation, it was revealed that King had been experiencing a great deal of stress in 1992. Her husband lost his job and filed a Chapter 13 bankruptcy petition, her mother had a stroke, and King was experiencing difficulty in working for Ron Mainous, her immediate supervisor at State Farm. In the fall of 1992, King became depressed. Her last day of work was September 17, 1992. Her husband called State Farm to say that King was ill. King went to her family physician on September 19, 1992 because she could not stop crying. Her physician prescribed medication and referred her to a psychiatrist. King's husband again called State Farm stating that King could not return to work until after October 2, 1992, the date of her first session with the psychiatrist.

King testified that the psychiatrist advised her to quit her job due to the stress. The record discloses, however, that King was the person who made the final decision to quit her job. King remained on a leave of absence until December 28, 1992, the day that State Farm accepted her letter of resignation. In her letter, King cited stress caused by working with Mainous and stress in her personal life as the reasons for her resignation. King did not reveal her problems with Mainous until she submitted her letter of resignation.

Ron Mainous stated that State Farm realized King was on a medical leave of absence for major depression. He asserted, however, that neither King nor her psychiatrist had ever informed State Farm or himself that the stress of her job caused her depression. Mainous maintained that State Farm has an "open door" policy for employees who are not satisfied with their current jobs and that a change of jobs in King's case was "possible."

Based on this evidence the board reversed the decision of the first hearing officer. It determined that, because she failed to prove that she provided State Farm with an opportunity to offer her a position commensurate with her capabilities, King's resignation from her job was voluntary. Therefore, the board held that King had quit her job without just cause and was not eligible for unemployment benefits.

King appealed this judgment to the Lucas County Court of Common Pleas, where appellee, the board, was made a party to the appeal. Upon a review of the parties' briefs and the administrative record, the trial court found that the board's decision was reasonable, lawful and supported by the manifest weight of the evidence. This appeal followed.

Our standard of review is the same as that of the common pleas court. We review the board's "just cause" determination and can reverse only if the determination is "unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus. Issues of credibility are for the board. A reviewing court cannot substitute its judgment for a board's factual finding, but can only determine if the board's decision is supported by the weight of the evidence. *Id.* at 696, 653 N.E.2d at 1210. The fact that "reasonable minds might reach different conclusions is not a basis for reversal of the board's decision." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 19 OBR 12, 15, 482 N.E.2d 587, 590.

In her first assignment of error, appellant asserts that she took "reasonably necessary" steps to notify her employer of the medical reason for her resignation and that the evidence demonstrates that State Farm did not have a comparable job for her to perform. She therefore concludes that the requirements set forth in *Irvine* were met, and the board and common pleas court erred in finding that she had quit her job without just cause.

The Ohio Unemployment Compensation Act does not protect against voluntary unemployment. R.C. 4141.29(D)(2)(a) provides that no employee may be paid benefits if the administrator finds that he or she quit work without just cause or was discharged for just cause in connection with his or her work. The burden of proof is on the claimant to show entitlement to benefits by demonstrating just cause for quitting work. *Irvine,* 19 Ohio St.3d at 17, 19 OBR at 14, 482 N.E.2d at 589.

"Just cause" in a statutory sense is "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Id.* at 17, 19 OBR at 14, 482 N.E.2d at 589, citing *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 9, 335 N.E.2d 751, 752. The determination of what constitutes quitting with just cause is a question of fact to be determined on a case by case basis and depends on the unique fact pattern of each case. *Id.* at 17, 19 OBR at 14, 482 N.E.2d at 589.

The *Irvine* court found that the Ohio Unemployment Compensation Act was intended to aid individuals who, through no fault or agreement of their own, are temporarily unemployed. *Id.* at 17, 19 OBR at 14, 482 N.E.2d at 589, citing

*Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 51, 399 N.E.2d 76, 79. Thus, as discussed in *Tzangas,* 73 Ohio St.3d at 695–696, 653 N.E.2d at 1209–1210, a consideration of the employee's fault or responsibility for her own predicament is necessary to a just cause determination. See, also, *Ohio Turnpike Comm. v. Saunders* (Nov. 12, 1992), Cuyahoga App. No. 61059, unreported, 1992 WL 333128. Accordingly, under *Irvine,* an ordinarily intelligent employee, such as King, with health problems but who is physically capable of maintaining a position of employment with her employer does not quit with just cause unless she demonstrates that she inquired as to available employment opportunities commensurate with her physical capabilities and none was offered to her by her employer. *Id.* at syllabus.

 Based on the evidence offered at the administrative hearings, the board could reasonably conclude that appellant did not prove that she met the requisites of *Irvine.* King never fully apprised State Farm of her health problems or the cause of those problems until she quit her job, thereby preventing her employer from offering her alternate forms of employment. These facts cannot even satisfy the "reasonably necessary steps" standard set forth in *Harmony v. Ohio Bur. of Emp. Serv.* (Mar. 28, 1990), Delaware App. No. 89–CA–28, unreported, 1990 WL 41580. Appellant did not take *any* steps to alleviate the problem before she left her employment.

Accordingly, King's first assignment of error is found not well taken.

In her second assignment of error, King contends that the trial court erred in failing to apply the concept of "constructive discharge" to the facts of this case.

 Constructive discharge is a legal principle frequently applied to employment discrimination cases. See, *e.g., Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. In a civil case involving an allegation of "constructive discharge," the focus is on the intent of the employer *and whether the employer. acted wrongfully. Id.* at paragraph one of the syllabus. On the other hand, a statutory administrative proceeding under R.C. Chapter 4141 centers on "just cause" and the conduct of the employee. *Morris v. Ohio Bur. of Emp. Serv.* (1993), 90 Ohio App.3d 295, 629 N.E.2d 35. Thus, the legal theories have different elements, and constructive discharge is inapplicable in an administrative unemployment compensation proceeding.

 Nonetheless, a constructive discharge argument does not analytically remove a case from a just cause determination under R.C. Chapter 4141. *Biles v. Ohio Bur. of Emp. Serv.* (1995), 107 Ohio App.3d 114, 667 N.E.2d 1244. In such cases, the employee must prove that he or she quit with just cause. Generally, a person who quits because of a problem with working conditions must first notify the employer of the problem, thus giving the employer the opportuni-

ty to deal with it. *Krawczyszyn v. Ohio Bur. of Emp. Serv.* (1989), 54 Ohio App.3d 35, 560 N.E.2d 807; *DiGiannantoni v. Wedgewater Animal Hosp., Inc.* (1996), 109 Ohio App.3d 300, 671 N.E.2d 1378; *Biles, supra.* Again, based on the evidence before it, the board could reasonably conclude that appellant offered no evidence of the fact that she provided notice to State Farm of the problems cause by Mainous, thereby depriving her employer of an opportunity to deal with this problem.

Accordingly, appellant's second assignment of error is found not well taken.

We find the decision of the board is lawful, reasonable and not against the manifest weight of the evidence. The judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to Patricia L. King.

*Judgment affirmed.*

GLASSER and ABOOD, JJ., concur.