OPINION
Appellant, Joann Jones, appeals from a judgment entered in the Mahoning County Common Pleas Court overruling her objections to a magistrate's decision and adopting the decision as its own. The magistrate's decision affirmed a decision of the Unemployment Compensation Review Commission denying appellant unemployment compensation benefits.
Appellant was employed as a dietary aide by Park Vista Retirement Community, a division of Ohio Presbyterian Retirement Communities (employer), beginning on January 23, 1995. The employer had a formal no-fault attendance policy. Appellant acknowledged receipt of this policy and was familiar with it.
The policy provided that, within a rolling twelve-month period, six occurrences of absence were permitted without any disciplinary action being taken, seven resulted in a written record of an oral warning, eight resulted in a written warning, nine resulted in a final warning, and ten resulted in termination.
The policy also provided that, within a rolling twelve-month period, any combination of seventeen occurrences of tardiness or leaving early resulted in a written record of an oral warning, eighteen resulted in a written warning, nineteen resulted in a final warning, and twenty resulted in termination. Additionally, the policy provided that two final written warnings for any attendance related issues in a twelve-month period would result in termination.
On October 8, 1997, the employer issued appellant a final warning for nineteen incidents of appearing for work late or leaving early. It issued her additional warnings for appearing for work late or leaving early on November 19, 1997, November 23, 1997, December 12, 1997, December 15, 1997, and January 8, 1998.
The employer issued appellant written warnings for having eight absences in a twelve-month period on September 3, 1997, October 26, 1997, and December 12, 1997. The employer issued her an oral warning for having seven absences within a twelve-month period on February 13, 1998. It issued her a written warning on March 25, 1998 for having eight absences within a twelve-month period.
On June 9, 1998 appellant's daughter suffered a gunshot wound and spent several days in the hospital. Appellant was scheduled to work the next day. She called her supervisor, explained the situation, and requested a leave of absence to care for her daughter. The employer granted her a leave of absence from June 10, 1998 until June 20, 1998. The employer counted that period as a single occurrence of absence.
Appellant returned to work and on June 22, 1998, her employer issued her a written warning for her recent absence. This was her eighth occurrence of absence in a rolling twelve-month period. Appellant was off on June 25th when her daughter developed complications from her gunshot wound. Appellant took her daughter back to the hospital and learned that she needed surgery. Appellant was scheduled to work on June 28th. She reported to work that morning but only to request a leave of absence to be with her daughter. She was permitted to take a leave of absence from June 28, 1998 until July 12, 1998.
Appellant returned to work on July 13, 1998. On July 17th, she reported to work and met with the employer who issued her a final warning for her ninth occurrence of absence for the leave of June 28th to July 12th. Because she had been issued a previous final warning for tardiness on October 8, 1997, she was terminated for having two final warnings in a twelve-month period. In lieu of termination, the employer offered appellant a last chance agreement providing that she could keep her job but if she had two more occurrences of absence in the next twelve months she would be terminated. Appellant refused this agreement and was therefore terminated.
On July 20, 1998, appellant filed an application for the determination of unemployment compensation rights with the Administrator of the Ohio Bureau of Employment Services (OBES). Pursuant to a decision mailed on August 13, 1998, the Administrator denied appellant's request for unemployment compensation benefits, finding that appellant had been discharged from employment because of excessive absence or tardiness without justification. Appellant then filed a timely request for reconsideration of the August 13, 1998, decision. Pursuant to a decision mailed on August 21, 1998, the Administrator affirmed its earlier determination of September 25, 1998, finding that appellant was discharged for just cause in connection with her work. Thus, appellant was denied unemployment compensation benefits. Appellant then filed a timely appeal from the Administrator's Reconsideration Decision.
Thereafter, a hearing was held on September 17, 1998, before a hearing officer of the Ohio Unemployment Compensation Review Commission. Pursuant to a Decision mailed on September 24, 1998, the hearing officer affirmed the Administrator's Decision on Reconsideration. The hearing officer determined that appellant's recurring problems with attendance was contrary to the employer's best interest and warranted her discharge. Therefore, the hearing officer concluded that appellant was discharged for just cause in connection with work. Appellant's subsequent application to institute a further appeal was disallowed by the State of Ohio Unemployment Compensation Review Commission.
Appellant, on February 5, 1999, filed an appeal with the Mahoning County Common Pleas Court. The case was assigned to a magistrate who, in a decision filed on June 18, 1999, affirmed the commission's decision. On July 2, 1999, appellant filed objections to the magistrate's decision arguing that her last two occurrences of absence were protected under the Family and Medical Leave Act of 1993. On July 16, 1999, the trial court overruled appellant's objections and adopted the magistrate's decision as its own. This appeal followed.
Appellant's sole assignment of error states:
 "THE REVIEW COMMISSION'S DECISION THAT JONES WAS DISCHARGED FOR JUST CAUSE IN CONNECTION WITH WORK FOR VIOLATING HER EMPLOYER'S ATTENDANCE POLICY IS UNLAWFUL, UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EMPLOYER VIOLATED FEDERAL LAW WHEN IT COUNTED TWO FAMILY AND MEDICAL LEAVE ACT LEAVES AS ABSENCES UNDER ITS PROGRESSIVE DISCIPLINARY ATTENDANCE POLICY."
Appellant argues that an employee is not terminated for just cause when the employee is discharged for conduct that is protected by federal labor law. Specifically, appellant argues that her employer violated federal law when it counted her eighth and ninth occurrences of absence against her since they should have been covered by the Family and Medical Leave Act (FMLA).
An appellate court may reverse the Unemployment Compensation Review Commission's just cause determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas,Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, syllabus. While appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the commission's decision is supported by the evidence in the record. Id. at 696. In addition, the fact that reasonable minds might reach different conclusions is not a basis for reversal of a decision of the commission. Irvine v. Unemployment Comp. Bd. of Review
(1985), 19 Ohio St.3d 15, 18.
R.C. 4141.29(D)(2)(a) prohibits the payment of benefits to an individual if the individual "has been discharged for just cause in connection with the individual's work." Just cause, in the statutory sense, is that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act. Irvine, supra. What constitutes just cause is a question of fact, and the determination of purely factual questions is primarily within the province of the review commission. Id.
An employer may justifiably discharge an employee without incurring liability for wrongful discharge, but that same employee may be entitled to unemployment compensation benefits. Durgan v. Ohio Bur. of Emp. Serv.
(1996), 110 Ohio App.3d 545, 549. This is because the determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act, which the Ohio Supreme Court has declared to be that of providing "financial assistance to an individual who has worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." Irvine, 19 Ohio St.3d at 17, citing Salzl v.Gibson Greeting Cards (1980), 61 Ohio St.2d 35, 39. As the Ohio Supreme Court has also noted:
 "[w]hen an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the [Unemployment Compensation] Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." Tzangas, 73 Ohio St.3d at 697-698.
Thus, a consideration of the employee's fault or responsibility for her own predicament is necessary to a just cause determination. King v. StateFarm Mut. Auto Ins. Co. (1996), 112 Ohio App.3d 664, 669.
An employee has the burden of proving that he is entitled to unemployment compensation benefits because he was discharged without just cause. Durgan, 110 Ohio App.3d at 550. In the instant case, appellant's employer operated pursuant to what is commonly termed a no-fault attendance policy. The purpose behind this type of policy is to (1) provide the worker with control over his continued employment with the company, and (2) relieve the employer of the task of determining whether an employee has a valid or exculpating reason for absences. Sutherlin v.Interstate Brands Corp. (1992), 79 Ohio App.3d 635, 637. Where an employer fires an employee for excessive absenteeism under a no-fault policy, the employee may still be entitled to compensation if she can establish that her absences were the result of a bona fide illness.Durgan, 110 Ohio App.3d at 550. See, also, Johnson Hardin Co. v. OhioBur. of Emp. Serv. (June 28, 1989), Hamilton App. No. C-880319, unreported, 1989 WL 71863 (rejecting argument that a no-fault policy cannot satisfy the just-cause standard for discharge under R.C.4141.29[D][2][a]). The employer's failure to question or investigate the employee's claim of illness because of its no-fault absenteeism policy does not relieve the employee of this burden. Durgan,110 Ohio App.3d at 551.
The Family and Medical Leave Act of 1993 (FMLA) provides:
"(a) In general.
 "(1) Entitlement to leave. * * * [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
 "(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
 "(B) Because of the placement of a son or daughter with the employee for adoption or foster care.
 "(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
 "(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of the employee." Section 2612(a), Title 29, U.S.Code.
Appellant asserts that her absences of June 10 through June 19 and June 28 through July 13 were leave qualifying under the FMLA. This presents the threshold question of whether an employee is discharged for just cause and thus disqualified from unemployment benefits when the employee is discharged for conduct protected under the federal labor laws.
The Eighth District Court of Appeals took up this issue in Giles v.Willis (1981), 2 Ohio App.3d 335. In Giles, an employee circulated a petition among his co-workers which requested that their employer grant all employees a holiday leave of absence from December 26 through December 29. The employee then submitted the petition, signed by all the department employees, to the department supervisor. The employee was discharged for his conduct. He filed a claim for unemployment compensation benefits. The OBES denied his claim based on a determination that he had been discharged for just cause, specifically, for threatening the company with a work stoppage.
On appeal to the common pleas court, the employee presented evidence that his conduct of circulating the petition was protected concerted activity under Section 7 of the National Labor Relations Act. He also presented evidence that even if the threat were unprotected activity the discharge was still unlawful because it was in part a reprisal for his protected concerted activity of circulating the petition. The court reversed the commission's decision as unlawful and against the manifest weight of the evidence.
Relying on a United States Supreme Court decision, the Eighth District Court of Appeals affirmed the common pleas court, stating:
 "We hold that an employee is not discharged for just cause where he is discharged for conduct which is protected by the United States Constitution or federal labor law. In Nash v. Florida Indus. Comm. (1967), 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438, the commission had denied unemployment benefits to the claimant because it found that her unemployment was not due to lack of work but due to her filing of an unfair labor practice charge against her employer. The United States Supreme Court found that the commission's denial of benefits for this reason discouraged persons from exercising their rights under federal labor law, thereby frustrating a valid national objective in violation of the supremacy clause. Thus, we will not construe Ohio law so as to deny benefits to one discharged for exercising his federal rights." (Footnotes omitted.) Giles, 2 Ohio App.3d at 338.
Like the policy involved here, an employer's policy as to calculation of "occurrences" and disciplinary actions flowing from such calculations cannot be applied to decrease an employee's rights under the FMLA. The Regulations specifically state:
 "An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under `no fault' attendance policies." (Emphasis added.) Section 825.220(c), Title 29, C.F.R.
See, also, George v. Associated Stationers (N.D.Ohio. 1996),932 F. Supp. 1012, 1017-1018.[1]
Appellee does not contest the applicability of the FMLA to a determination of appellant's entitlement to unemployment compensation benefits under Ohio law. Rather, appellee maintains that on the facts of this case appellant was not entitled to FMLA leave. Specifically, appellee argues that appellant was not entitled to FMLA leave because she had not exhausted her vacation and other paid leave.
Appellant cites to Section 2612(d), Title 29, U.S. Code, which states:
"(d) Relationship to paid leave.
 "(1) Unpaid leave. If an employer provides paid leave for fewer than 12 workweeks, the additional weeks of leave necessary to attain the 12 workweeks of leave required under this title * * * may be provided without compensation.
"(2) Substitution of paid leave.
 "(A) In general. An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under subparagraph (A), (B), or (C) of subsection (a)(1) for any part of the 12-week period of such leave under such subsection."
An employer may require an employee to exhaust accrued paid leave prior to taking unpaid leave that the employee would otherwise be entitled to under the FMLA. However, whether the leave is paid or unpaid, if it qualifies as leave under the FMLA, it is still considered FMLA leave and counts against the twelve weeks provided for under the Act. Additionally, even though the employer may require the employee to take accrued paid leave for qualifying FMLA leave, the employee still retains the protections of the FMLA. See Sections 825.207, 825.08, Title 29, C.F.R. Appellee next argues that appellant's leaves of absence did not qualify as FMLA leave because she failed to designate them as such.
When an employee's need for FMLA leave is not foreseeable, the employee must furnish notice to the employer of the need for FMLA leave as soon as practicable under the circumstances. Section 825.303(a), Title 29, C.F.R. The employee need not expressly assert rights under the FMLA or even mention the FMLA, she need only to inform the employer that she needs a leave. Section 825.303(b), Title 29, C.F.R. The employer is expected to obtain any additional information through informal means.Id.
In this case, it is important to draw a distinction between the two leaves of absence taken by appellant which are at issue. The first leave was June 10, 1998 through June 20, 1998. The second leave was June 28, 1998 through July 12, 1998. The second leave is the one that resulted in appellant receiving a second final warning which resulted in her termination.
Concerning the first leave, appellant testified that when she called the employer prior to the start of her shift on June 10th, she indicated that she was requesting the leave under the FMLA. Under the FMLA, this would have been adequate notice given the circumstances. However, when appellant submitted her written request for leave on June 14th, she designated the leave as non-FMLA leave. It was not until June 22, 1998, when appellant returned for work, that the employer issued her a written warning for an occurrence of an absence based upon the immediately preceding leave of absence taken by appellant. Since appellant subsequently designated the leave as non-FMLA leave, in writing, she should be estopped from asserting the protections of the FMLA for that leave.
Turning to the second leave, the evidence is uncontroverted that appellant requested the leave as a FMLA leave. As indicated earlier, the employer could not treat this leave as an occurrence of absence. Therefore, the employer was unjustified in issuing appellant a second, final warning based upon this leave and, consequently, could not yet terminate appellant.
Appellee also makes the argument that appellant's refusal to accept the last chance agreement constituted just cause. The last chance agreement would have allowed appellant two more absences before termination. Appellee argues that appellant could have easily avoided termination by accepting this last chance agreement and that by refusing to do so put her at fault for her termination.
Appellee's argument might have had some merit had we found that appellant was not protected under the FMLA. However, appellant's last occurrence which triggered her termination was a FMLA leave. As we indicated, FMLA leave cannot be counted as an occurrence under an employer's no-fault attendance policy. Therefore, since appellant's last leave of absence did not count as an occurrence, the employer was not yet justified in offering to her a last chance agreement.
Accordingly, appellant's sole assignment of error is with merit.
The judgment of the trial court is hereby reversed and this cause is remanded for further proceedings in accordance with the law and consistent with this opinion, with instructions to reverse the decision of the Unemployment Compensation Review Commission and remand the matter to the commission for allowance of appellant's claim.
Vukovich, J., concurs, and Waite, J., concurs.
[1] "[T]here is no discretion permitted for the Company to decide whether to apply the `last step' of its attendance policy. An attendance policy which does not except as an `occurrence' an absence caused by a serious medical condition violates the Act. If an employee's last `occurrence' is due to a serious health condition within the Act, the Company may not terminate the employee based upon its absenteeism policy. Fair or not, as seen through the eyes of the employer, this is the law."