DECISION. The plaintiff-appellant, Mark J. Kelly, appeals from the order of the trial court affirming the decision of the Ohio Unemployment Compensation Review Commission to deny him unemployment benefits. Kelly became unemployed after he had submitted a letter of resignation to his employer, Lambda Research, Inc., as the result of a dispute involving the contents of an internal memorandum. In his two assignments of error, Kelly asserts that the trial court erred by denying his motion to supplement the record and by upholding the decision of the commission that he had quit his employment without just cause. We find no merit in either assignment and thus affirm.
Kelly was the supervisor of the Phase and Texture Analysis Laboratory at Lambda when the incidents leading to his resignation began. Among the research laboratory's activities, Lambda did testing for materials purchased by General Electric Nuclear ("GEN"). In his capacity as supervisor, Kelly was aware that government regulations required that GEN be notified of any significant health and safety problems, including any defects in the products being tested.
In June of 1999, GEN questioned the test results of one specimen. Kelly was convinced that the defect was the result of a defect in laboratory testing procedures, and he raised the possibility with Lambda that other specimens, tested earlier, could have been defective in varying degrees. The owner of Lambda, Paul Prevey, did not concur in this assessment. Prevey felt that the questioned results were unique to the one specimen, and he notified GEN only with respect to that specimen.
An internal document was prepared, entitled "QA Incident Report." A rancorous dispute arose between Kelly and Prevey over the contents of the document. Kelly felt strongly that the document should refer to a possible problem with laboratory-wide testing procedures. Prevey was equally adamant that the report should discuss only the problem with the one specimen. In fact, so concerned was Kelly that the regulatory-notice requirements were being ignored that he confidentially contacted both the United States Department of Labor and the Nuclear Regulatory Commission.
Matters eventually came to a head over the incident report. According to Kelly, Prevey was insistent that he sign the report, but never directly threatened him with dismissal for refusing to do so. On the eve of a scheduled meeting to settle the matter, Kelly prepared a letter of resignation, citing the longstanding turbulent nature of his relationship with Prevey. Kelly wrote that Prevey had had a history of blaming him for pre-existing problems, and that "problems had developed over the years, in part because of [Prevey's] angry and hostile reactions when problems [were] called to [Prevey's] attention." Kelly criticized Prevey for trying to intimidate lab personnel and for frequently using obscenities and cursing him. Kelly wrote,
 You have threatened to fire me or remove me from my current position numerous times over revisions of procedures, wording in reports, technical discussions with co-workers, and sample preparation problems that you yourself were not able to correct, and problems which circumstances indicate you caused or contributed to. My responsibilities in the lab are very demanding and require time, concentration, and technically correct actions. I will not produce information that I know is wrong. Anticipation generated by and in reaction to your angry, threatening, insulting, degrading tirades have effectively ruined my ability to concentrate and to perform the analytical and managerial tasks required in the lab as they should have been done.
 Kelly stated that he was resigning because he could not "fulfill the responsibilities of [his] position under these circumstances that [Prevey had] created and [had] recently exacerbated, particularly under conditions created by [Prevey's] frequent abusive and contradictory comments." Kelly therefore asked Prevey to accept his two-weeks' notice of resignation.
Kelly testified at the hearing that his resignation was also inspired by the feeling that Prevey was maneuvering to replace him. He testified that another person had been brought into the laboratory, and that he had suspected this person of being groomed to assume his position once the person had become sufficiently familiar with laboratory procedures.
At the scheduled meeting, Kelly informed Prevey that he could not, in good conscience, sign the incident report. He stated that Prevey had looked disgusted and might have said words indicating the matter was no longer a subject of debate. Kelly testified that he had then become convinced that Prevey was going to fire him unless he signed the report. Although Kelly conceded that Prevey had never threatened him with dismissal at the meeting, he testified that his sense that he was about to be fired arose as a result of past threats of dismissal over the matter. Instead of waiting to be fired, Kelly gave Prevey his letter of resignation and, in effect, preemptively resigned.
Kelly was later asked to leave the premises on noon of the same day. He was paid for his two-week notice period. At the time of the hearing, neither the United States Department of Labor nor the Nuclear Regulatory Commission had taken any formal action.
In his first assignment of error, Kelly asserts that the trial court erred by denying his motion to supplement the record. He argues that he was entitled to supplement the record because Lambda had failed to send him a copy of its cover letter to the commission, dated June 5, 2000, in which Lambda had stated its position and which had been accompanied by copies of documents that Lambda had requested the hearing officer to consider. Although Kelly was sent copies of the documents, he was apparently not sent a copy of the letter outlining the position of the company.
Kelly characterizes the failure of Lambda to forward him a copy of the cover letter as a violation of the hearing rules requiring the exchange of evidence. According to Kelly, because the cover letter "contain[ed] statements purporting to be factual, th[e] letter [was] itself evidence." We agree with Lambda, however, that the cover letter was patently a statement of the company's position and did not purport to be, nor was it evidence. While the better practice may have been to forward Kelly a copy of the cover letter along with the documents it introduced, the failure to do so did not violate the rules of the hearing, nor did it provide any basis for the common pleas court to allow Kelly to supplement the record after the hearing had already been concluded.
Kelly also makes the argument that the hearing officer, due to time constraints, "repeatedly cut off" his testimony. A review of the transcript, however, quite clearly shows that the hearing officer offered to continue the hearing to provide the parties additional time, and that counsel on both sides agreed to the closing of the evidence.
Finally, Kelly argues that the hearing officer's conclusion that he had resigned without just cause was unreasonable and against the manifest weight of the evidence. "Just cause" is defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine v. Unemployment Comp. Bd. (1985),19 Ohio St.3d 15, 17, 482 N.E.2d 587, 589, quoting Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751, 752.
It bears emphasis that a reviewing court can reverse the commission's decision only if it is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.28(O)(1); Tzangas, Plakas Mannosv. Adm., Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694,653 N.E.2d 1207, paragraph one of the syllabus. See, also, Lutz v. Adm.,Ohio Bur. of Emp. Serv. (Nov. 12, 1999), Hamilton App. Nos. C-990162 and C-990228, unreported. "Issues of credibility are for the board. A reviewing court cannot substitute its judgment for the board's factual findings, but can only determine if the board's decision is supported by the evidence of record." Lutz, supra, citing Tzangas, supra at 696,653 N.E.2d at 1210.
In rejecting Kelly's claim, the hearing officer found as follows:
 Claimant has failed to establish that his only alternative on February 25, 2000, was to quit his employment. While he believed that he would be discharged if he did not sign the QAR, he admitted that Mr. Prevey had never told him that he would be discharged if he refused to sign the QAR. Claimant had already signed one QAR regarding this incident, and he could have simply refused to sign a different QAR. Further, just seven days before, claimant had written letters asking the NRC and the Department of Labor to investigate whether Lambda was forcing him to break the law. Nevertheless, he resigned his employment on February 25, 2000, even though he had not received any response to either letter.
 Based upon the evidence presented in this matter, it has not been established that claimant's decision to quit his employment on February 25, 2000, was the decision which would have been made by an ordinary, reasonable person under similar circumstances. Based upon the evidence presented in this matter, the Hearing Officer finds that claimant quit his employment with Lambda without just cause.
 Our review of the record reveals competent, credible evidence supporting the commission's finding that Kelly had quit his job at Lambda without just cause, thus rendering him ineligible for unemployment benefits. As we noted in Lutz, "[c]oncern over the perceived insecurity of one's job does not constitute just cause for quitting." Lutz, supra, citing Biles v. Ohio Bur. of Emp. Serv. (1995), 107 Ohio App.3d 114, 667 N.E.2d 1244.
Accordingly, we hold that the commission's decision was not against the manifest weight of the evidence, and that the trial court did not err by affirming it. Kelly's two assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
GORMAN, P.J., WINKLER and SHANNON, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.