[Cite as *Lancaster v. Cheeks Law Offices, L.L.C.*, 2019-Ohio-111.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Denise V. Lancaster, | : | |
| Appellant-Appellee, | : | |
| v. | : | |
| Cheek Law Offices, LLC, et al., | : | |
| | | No. 17AP-714 |
| Appellee-Appellee, | : | (C.P.C. No. 17CV-1137) |
| (Ohio Department of Job and Family Services, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellant.) | : | |
| | : | |

D E C I S I O N

Rendered on January 15, 2019

**On brief:** *The Legal Aid Society of Columbus, Kristy A. Michel*, and *Kathleen C. McGarvey*, for appellant-appellee, Devise V. Lancaster. **Argued:** *Kristy A. Michel.*

**On brief:** [*Dave Yost*], Attorney General, and *Alan Schwepe*, for appellee-appellant, Director, Ohio Department of Job and Family Services. **Argued:** *Alan Schwepe.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Appellee-appellant, the Director of Ohio Department of Job and Family Services ("ODJFS"), appeals from a judgment of the Franklin County Court of Common Pleas, reversing a decision of the Unemployment Compensation Review Commission ("commission"). The commission concurred with a determination of ODJFS, Office of Unemployment Compensation. Appellant-appellee, Denise V. Lancaster, had a claim for unemployment compensation benefits which ODJFS disallowed based on its finding that

her employer, Cheek Law Offices, LLC ("CLO"), terminated her employment for just cause. We affirm the judgment of the common pleas court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  CLO is a law firm with offices located on the 12th floor of the Motorists Insurance Building ("Motorists Building") in Columbus, Ohio.  Lancaster began working at CLO on July 25, 2016 as a skip tracer.  The Motorists Building is a secured building. Employees are issued an identification badge which grants them access to the main ingress/egress and their work space and the elevator.  For example, employees of CLO are granted access to the building, the elevator, and the 12th floor.  The elevator provides access to the lobby of any floor in the building.  However, the identification badge does not grant access to the offices on any other floor.  The building has 21 floors and the executive offices of Motorists Insurance are on the 21st floor.

{¶ 3}  On October 18, 2016, Lancaster used the elevator during her lunch break to go to the 21st floor of the Motorists Building.  The general manager of CLO, Toni Cheek, testified that its employees are "free to do what they want" during their lunch breaks.  (Feb. 27, 2017 Record of Proceedings at E2686-T86.)  Lancaster testified that she believed she had permission to enter the 21st floor because other people who worked in the building encouraged her to visit the 21st floor to see the view and meet the friendly people who work on that floor.  Lancaster attempted to use her identification badge to open the office doors to the 21st floor, but it did not work.  The chief legal officer, Marchelle Moore, employed at Motorists Insurance exited the restroom and approached Lancaster.  Cheek testified that the lawyer asked Lancaster several questions and Lancaster was evasive in her answers. Lancaster testified that an administrative assistant, Kay Powell, came to the door at almost the same time as the lawyer.  Powell escorted Lancaster around the floor and permitted her to take pictures of the view with her phone.  Powell gave Lancaster her telephone number and told Lancaster that she could visit anytime with a prior telephone call.

{¶ 4}  Lancaster testified she did not spend much time on the 21st floor because she was in a hurry with just a few minutes left during her lunchtime.  As Lancaster was leaving, a security guard arrived in the elevator.  As she descended to the 12th floor, he asked her what she was doing and she replied that she was visiting another employee during her lunch break.  Lancaster testified the security guard told her he had seen her on the security camera.  She returned to work, and he continued down in the elevator.

{¶ 5} The next day, on October 19, 2016, Lancaster again went to the 21st floor during her lunchtime. Lancaster called Powell on her way up to the 21st floor and left a voicemail message. Powell met Lancaster in the lobby outside the office and informed her it was not a good time for a visit. Lancaster attempted to return to the elevator but was approached by security. Cheek testified that Lancaster took the elevator to the 10th floor instead of the 12th floor. Lancaster stated she forgot to push the correct elevator button. Lancaster testified that she had previously been stalked and, therefore, is hesitant to provide personal information. Since other people were also in the elevator, the security guard's questions made her feel uncomfortable. She exited the elevator on the 10th floor and answered the security guard's questions when they were alone and then she took another elevator to the 12th floor.

{¶ 6} Cheek testified that late in the afternoon on October 18, the director of facilities, Todd Hayward, telephoned her and explained that Lancaster had been on the 21st floor and tried to use her identification badge to access the executive offices. He explained that the Motorists Insurance chief legal counsel saw Lancaster and became upset at Lancaster's evasiveness. Cheek intended to speak to Lancaster about the incident but did not do so before lunchtime on October 19.

{¶ 7} After Lancaster returned to the 21st floor on October 19, Cheek terminated Lancaster's employment for trespassing on another floor and being evasive when questioned. Cheek terminated Lancaster's employment deeming her a security risk. Cheek testified that Lancaster explained that she had been invited to the 21st floor the second time and that Powell gave her cell phone number to Lancaster in order to do so.

{¶ 8} Hayward sent Cheek an email on October 19, 2016, stating the following:

> I visited with Marchelle Moore and Kay Powell today regarding this. [Moore] is our Chief Legal Officer and [Powell] is her Executive Assistant. According to them, yesterday at approximately 1:10 pm [Lancaster] was standing at the entry door on the 21st floor when [Moore] came out of the women's restroom. [Moore] approached her and proceeded to ask her several questions. Can I help you? Are you an associate? Do you have an appointment? Who do you work for? And so on. [Moore] stated that [Lancaster] would not answer her questions and was being extremely vague. She even said she didn't like to tell people who she worked for. (Yet she shows up unannounced on another floor). During

this exchange [Powell] came to the doors and [Moore] stated that she was so irritated she left to let [Powell] handle the situation.

[Powell] stated that [Lancaster] indicated that she wanted to look around and that she heard that everyone on the floor was really nice. [Powell], (which she shouldn't have done) allowed her access and escorted her around the floor and showed her around. [Powell] indicated [Lancaster] stated that she had been standing out in the lobby for a while and now she was going to be late getting back from lunch but she would like to come up again another time. [Powell] states she was with [Lancaster] for probably 4-5 minutes.

In speaking with both of them today the words they used to describe the situation was weird and annoying. I hope this helps.

(Record of Proceedings at E2686-S74.)

{¶ 9} Lancaster applied for unemployment benefits which were denied on November 9, 2016. Lancaster filed an appeal the same day. On November 30, 2016, the director issued a redetermination disallowing claimant's application based upon the finding that claimant was discharged from employment with CLO for just cause in connection with work. That same day, Lancaster filed an appeal from the redetermination. On December 1, 2016, ODJFS transferred jurisdiction to the commission. On December 14, 2016, a telephone hearing was held by the hearing officer. The hearing officer affirmed the director's redetermination on December 22, 2016. On December 23, 2016, Lancaster requested a review by the commission which was denied on January 11, 2017. On February 1, 2017, Lancaster filed an appeal to the Franklin County Court of Common Pleas, which reversed the commission's decision.

## II. ASSIGNMENTS OF ERROR

{¶ 10} ODJFS filed a timely notice of appeal and raised the following assignments of error for our review:

1. In its decision of September 20, 2017, the lower court erred when it held that the January 11, [2017] decision of the Unemployment Compensation Review Commission was unlawful, unreasonable, or against the manifest weight of the evidence.

2. The lower court erred in its decision of September 20, 2017 when it substituted its judgment, and failed to defer, to the Unemployment Compensation Review Commission on the resolution of factual issues including, but not limited to, just cause in the discharge of Ms. Lancaster.

## III.  STANDARD OF REVIEW

{¶ 11} ODJFS initiated this appeal pursuant to R.C. 4141.282(A).  R.C. 4141.282(H) governs judicial review of decisions of the commission.  It provides:

> The court shall hear the appeal on the certified record provided by the commission.  If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission.  Otherwise, the court shall affirm the decision of the commission.

{¶ 12} A common pleas court and an appellate court employ the same standard of review in unemployment compensation appeals:  "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence."  *Tzangas, Plakas & Mannos v. Admin., Ohio Bur. of Emp. Servs.,* 73 Ohio St.3d 694 (1995), paragraph one of the syllabus; R.C. 4141.282(H).  A reviewing court may not make factual findings or determine the credibility of witnesses.  *Id.* at 696, citing *Irvine v. Unemp. Comp. Bd. of Review,* 19 Ohio St.3d 15, 17-18 (1985).  However, the reviewing courts do have a duty to determine whether the evidence in the record supports the commission's decision and whether that determination applies the correct legal standard.  *Dziengelewski v. Knox Cty. Bd. of Edn.,* 10th Dist. No. 13AP-612, 2014-Ohio-2282, ¶ 7, citing *Tzangas,* citing *Dublin v. Clark,* 10th Dist. No. 05AP-431, 2005-Ohio-5926, ¶ 20.

## IV.  ANALYSIS

{¶ 13} The assignments of error are related and we address them together.  The essence of the assignments of error is that the common pleas court erred in finding that the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence because ODJFS argues that the common pleas court substituted its judgment, and failed to defer, to the commission in its resolution of factual issues including, but not limited to, the commission's just cause determination.

{¶ 14} The Unemployment Compensation Act " 'was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' " *Tzangas* at 697, quoting *Irvine* at 17.

> The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Tzangas* at 697-98.

{¶ 15} The determination of fault of the employee is an essential component of a just cause termination. When an employer is reasonable in finding fault on the employee's part, the employer may discharge the employee with just cause. *James v. Ohio State Unemp. Review Comm.*, 10th Dist. No. 08AP-976, 2009-Ohio-5120, ¶ 14, citing *Tzangas*. However, the unemployment compensation statutes must be liberally construed in favor of awarding benefits to the applicant. *David A. Bennett, D.D.S., Ltd. v. Dir., Ohio Dept. of Job and Family Servs.*, 10th Dist. No. 11AP-1029, 2012-Ohio-2327, ¶ 6, citing *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin*, 2d Dist. No. 2006-CA-32, 2007-Ohio-1674, ¶ 10, citing R.C. 4141.46; *Ashwell v. Dir., Ohio Dept. of Job & Family Servs.*, 2d Dist. No. 20552, 2005-Ohio-1928, ¶ 43.

{¶ 16} In the context of a discharge from employment, "just cause" is the type of conduct that "an ordinarily intelligent person would regard as a justifiable reason for discharging an employee." *James* at ¶ 11. A determination that "just cause" exists depends on the facts of each case. *Id.*, citing *Irvine* at 17.

{¶ 17} The credibility of witnesses and the weight to be given to the evidence are primarily matters for the hearing officer and the board of review. *Waddell v. Barkan & Neff*, 62 Ohio App.3d 158, 161 (10th Dist.1989). As stated, a reviewing court should not reverse the agency's decision unless the court finds the decision was unlawful, unreasonable, or against the manifest weight of the evidence. *Id.* However, courts should reverse an agency's ruling which reaches an unreasonable conclusion from essentially undisputed evidence at the hearing. *Id.*, citing *Opara v. Carnegie Textile Co.*, 26 Ohio App.3d 103 (8th Dist.1985), paragraph one of the syllabus. "That determination requires

less deference to the agency because it resolves the legal effect of unchallenged facts rather than the existence of such facts." *Opara* at 106.

{¶ 18} CLO terminated Lancaster's employment because she violated a company policy regarding floor access in the building. However, there is no evidence that CLO informed Lancaster of the policy.

{¶ 19} The hearing officer found that Lancaster knew her building identification badge only worked on doors on the floor on which she worked. Lancaster was evasive with Moore and security on October 18. On October 19, Lancaster was evasive with security again. The hearing officer found that while the employer talked with Lancaster concerning the two incidents, Lancaster did not answer all the employer's questions and the employer immediately terminated her employment as a "security risk." The hearing officer concluded, as follows:

> [Lancaster] worked in a secure building. She only had access to floors authorized by [CLO], including the 12th floor. [CLO] did not authorize [Lancaster] to be on the 21st floor. When [Lancaster] took an elevator to the 21st floor on October 18, she knew she was going to a floor that she did not have permission to be on. This is further evidenced by the locked door, the fact that the swipe card did not open the locked door, and the statement made by [Lancaster] that security does not arrive unless called due to a concern by the tenants. When confronted by Motorists staff and building security she was not forthcoming. Despite building security appearing on October 18 when she arrived on the 21st floor, she went back on the October 19. She was evasive with both building security and [CLO] when asked about the incident.
>
> The landlord expressed concerns to [CLO] about [Lancaster] being in secured locations in the building. [Lancaster] knew or should have known that she was not to be on any floor other than those authorized by [CLO]. Based upon the evidence presented, the Hearing Officer finds the [Lancaster] committed sufficient misconduct to justify her discharge. Under the circumstances, this Hearing Officer finds that [Lancaster] was discharged by [CLO] for just cause in connection with work.

(Record of Proceedings at E2686-U30.)

{¶ 20} The common pleas court found there was no just cause to terminate Lancaster's employment because she was not placed on notice of the policy she is alleged to

have violated. The common pleas court did not find that Lancaster "knew or should have known" of the policy prohibiting her from visiting other floors in the building. *Id.*

{¶ 21} ODJFS argues that the common pleas court substituted its judgment, and failed to defer, to the commission's just cause determination. The court's duty is to determine whether the evidence in the record supports the commission's decision and if the commission applied the correct legal standard.

{¶ 22} The hearing officer concluded that Lancaster "knew or should have known" that she was not to be on any floor other than those authorized by her employer. *Id.* However, the evidence does not support this conclusion. Cheek testified that security officers explain to employees on their first day of employment that the identification badge is necessary to enter the 12th floor. She further elaborated that the elevator exits to all the floors. Cheek was uncertain whether Lancaster's conduct violated a work rule. She testified, as follows:

> Well, I don't know if it's a, a work rule or just common knowledge, but the security badges are considered business property and you're only supposed to use it to come in and out of the building and in and out of our office and I believe that's made fairly clear to all people that come to work here.
>
> * * *
>
> This was such an unusual occurrence that there are certain things you have policies for that, that might be questionable, but entering another person's business uninvited and trying to use a security badge, your security badge is to access another person's business, nobody would ever write a policy about that just because you would know that's why they issue security badges.

*Id.* at E2686-T87 through T88.

{¶ 23} Lancaster testified that she was unaware of any policy prohibiting her from visiting the 21st floor and, further, she had been encouraged by other employees to do so. Moreover, Powell had invited her to visit again and provided her cell phone number. CLO provided no evidence contradicting Lancaster's testimony. Cheek testified she did not know whether the policy was "a work rule or just common knowledge." *Id.* at E2686-T87. There was no written policy provided and no testimony that someone in authority from

CLO had informed Lancaster of any such policy. Furthermore, Cheek testified that CLO's employees are "free to do what they want" during their lunch breaks. *Id.* at E2686-T86.

{¶ 24} The evidence at the hearing, as noted above, was essentially undisputed. Given this evidence, it does not support the conclusion that Lancaster "knew or should have known" of the policy prohibiting her from visiting other floors in the building. *Id.* at E2686-U30. There is no evidence that CLO informed Lancaster of the policy. Under these circumstances, we reverse the commission's decision because it reaches an unreasonable conclusion from essentially undisputed evidence. ODJFS's assignments of error are overruled.

## V. CONCLUSION

{¶ 25} For the foregoing reasons, ODJFS's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK, J., concurs.
LUPER SCHUSTER, J. dissents.

––––––––––––